Filed 7/13/15  Certified for publication 8/5/15 (order attached)


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| ROBERT S. COLDREN, as Trustee, etc., et al.,<br><br>    Plaintiffs, Cross-defendants and Respondents,<br><br>        v.<br><br>HART, KING & COLDREN, INC., et al.,<br><br>    Defendants, Cross-complainants, and Appellants. | G050202<br><br>(Super. Ct. No. 30-2014-00697576)<br><br>O P I N I O N |


        Appeal from an order of the Superior Court of Orange County, Frederick P. Horn, Judge.  Reversed.

        Grant, Genovese & Barratta, David C. Grant and Ronald V. Larson, for Defendants, Cross-complainants and Appellants.

        Pistone Law Group, Thomas A. Pistone; Salisbury Group, Lisa G. Salisbury; Law Office of William J. Kopeny and William J. Kopeny for Plaintiffs, Cross-defendants and Respondents.

Plaintiffs Robert Coldren (Coldren) and his wife Brook Coldren sued defendants Hart, King & Coldren, Inc. (HKC) and William R. Hart asserting several causes of action arising out of Coldren's departure from his law practice at HKC.[1] Defendants appeal from an order disqualifying HKC's counsel, Grant, Genovese & Barratta LLP (Grant Genovese), who had been representing both Hart and HKC. The court held there was an unwaivable actual conflict between the two. The court concluded a conflict existed because Coldren is a 50 percent shareholder of HKC, and HKC would have duties to Coldren that were in conflict with Hart's interests in defeating the litigation. Accordingly, the court ordered Hart to confer with Coldren on the appointment of "neutral" counsel for HKC.

We reverse. Coldren sued both Hart and HKC—directly, not derivatively—on essentially the same claims. He is seeking over $8,000,000 in damages against both. Hart's interest is perfectly aligned with HKC's interest in seeing Coldren's claims defeated. Coldren's position seems to be that he can sue his company and then, because he is a 50 percent shareholder, have a say in its defense. That is not the law. Moreover, Grant Genovese's duty of loyalty, as counsel for HKC, runs to HKC, not its shareholders. HKC is free to defend itself and assert relevant counter claims to the detriment of Coldren. Since there is no conflict, we reverse.

---

[1] Brook Coldren is a party only because she is a trustee of the trust that holds Coldren's shares of stock in HKC. Because Brook Coldren does not play an active role in this case, we henceforth refer only to Coldren.

# FACTS[2]

HKC is an Orange County law firm formed in November 1982. Pursuant to a shareholder agreement signed in 2005 (the shareholder agreement), HKC had two equal shareholders, Hart and Coldren. Hart and Coldren were each directors. Coldren was the president, and Hart was the Secretary/Treasurer. Hart and Coldren both placed their 50 percent ownership interests in their respective family trusts.

Late in 2012, Coldren announced he intended to retire from the practice of law. Hart and Coldren negotiated and signed a written agreement setting forth certain terms governing Coldren's departure (we refer to it as the departure agreement). The departure agreement, such as it is, is a bullet point list of terms with several hand-written modifications. One of the handwritten bullet points states, "This agreement is binding on the parties." However, it also contemplates more formal documents to be signed in the first quarter of 2013 (which never happened). It is signed by Hart, Coldren, and HKC (by Hart).

The departure agreement provided that Coldren would resign as an officer and director as of January 1, 2013 (Coldren subsequently confirmed in writing that he did, in fact, resign). He was to stay with HKC as an independent contractor throughout the year at a base compensation of $500,000. Coldren was expected to bill 900 hours for the year, "including administrative time spent in transitioning clients and business, in 2013." Coldren agreed "to give 'best efforts' to work closely with the HKC partners to transition the practice, clients & matters for which [Coldren] is principally responsible to those HKC partners to the greatest extent reasonably possible throughout 2013." The

---

[2] We note at the outset that Coldren did not provide us a statement of facts in his brief. Although, under rule 8.204(a) of the California Rules of Court, Coldren is not required to do so, our statement of facts necessarily reflects only what we have gleaned from our independent review of the record together with Hart's statement of facts.

agreement also affirmed "that HKC clients/matters are HKC assets & that if either [Coldren] or [Hart] are paid individually or through another firm by a firm client that HKC is entitled to 20% of all such fees collected through 2016." It also gave Coldren the option of formal retirement or of counsel or alternative." The agreement contemplated paying Coldren $1.5 million for his stock, set up as $50,000 to be paid in 2012, $50,000 in January 2013, and the remaining $1.4 million payable in 12 consecutive quarterly payments commencing in January 2014. Those payments were to be made pursuant to a promissory note secured by 50 percent of HKC stock.

In January 2014, Coldren initiated the present lawsuit against HKC and Hart, asserting seven causes of action: involuntary dissolution, breach of written contract, conversion, wages owed (against HKC), accounting, breach of fiduciary duty (against Hart), and "appointment of receiver and injunction" (against HKC).

Coldren alleged: "In 2012, R. Coldren indicated a desire to change his practice and sell the 50% ownership of HK&C owned by the Coldren Trust, and in December of 2012 a document was signed by R. Coldren and Hart, which document has since been dishonored and repudiated by Hart. [¶] 9. As Hart and R. Coldren attempted to formally document and implement the sale of R. Coldren's stock, differences developed between Hart and R. Coldren, and an impasse was reached, resulting in an inability or unwillingness to finalize and execute formal agreements, and an inability to continue working together as 50% shareholders." Coldren went on to allege Hart had "taken actions" that warrant a dissolution of HKC, but did not specify what those actions were.

Regarding the breach of contract cause of action, Coldren alleged Hart and HKC had breached the *shareholder* agreement, which entitled Coldren to be president of

4

the firm, to take an annual salary, and to receive 50 percent of the "net distributable revenue." Coldren alleged damages of $8 million.[3]

With regard to the conversion cause of action, Coldren alleged Hart had transferred a partial ownership interest in a company called Terranea LLC to HKC. Coldren alleges he is entitled to half of that interest, and that the transfer of the interest to HKC constituted conversion.

The remaining causes of action did not specify any additional facts, but simply incorporated the foregoing.

In response, HKC and Hart filed a cross-complaint against Coldren, asserting six causes of action: declaratory relief (in two forms), breach of contract (in two forms), breach of fiduciary duty, and fraud.

Hart alleged that, despite promises not to compete in the shareholder agreement and to use best efforts to transition clients in the departure agreement, Coldren was in fact stealing clients and opening up a practice in direct competition with HKC. Hart alleged this conduct breached the noncompete provision of the shareholder agreement, and the requirement in the departure agreement that Coldren use "best efforts" to transition clients to other partners at HKC. These same allegations formed the basis of the breach of fiduciary duty causes of action and the fraud cause of action.[4] In terms of damages, the cross-complaint claimed $3 million in damages. Hart and HKC

---

[3]     Coldren's claim for damages based on a breach of the *shareholder* agreement is somewhat confusing. Presumably it is premised on the notion that Hart repudiated the departure agreement, returning the parties to the status quo ante, though the complaint does not make that explicit. Moreover, Coldren does not explicitly seek to rescind the departure agreement, and, as we note below, Hart is seeking damages pursuant to the departure agreement and thus appears *not* to have repudiated it.

[4]     As we discuss below, one breach of fiduciary duty cause of action was alleged on behalf of Hart, and another derivatively on behalf of HKC. It is unclear to us why the latter was styled as a derivative claim when HKC was a named cross-complainant.

also alleged that, pursuant to the departure agreement, HKC had paid $550,000 to Coldren, and that any amounts remaining due under the departure agreement would be offset by the damages alleged in the cross complaint.

On both the answer and the cross-complaint, HKC and Hart were jointly represented by the law firm Grant Genovese. After filing the answer and cross-complaint, HKC filed a motion under Corporations Code section 2000, to stay the dissolution action and appoint appraisers in the event it were to elect a buyout of Coldren's shares. (*Id.*, subds. (a), (b).)

Coldren subsequently brought a motion to disqualify Grant Genovese from representing HKC on the ground that it was improper for Hart to be directing HKC to sue Coldren, a 50 percent shareholder. The court issued a tentative ruling denying the motion, stating, "The Motion to Disqualify Defense Attorneys is DENIED. In this case, Plaintiff Coldren are seeking involuntary dissolution and asserting personal claims. The allegation of conflict of interest is only potential, not actual. *Havasu Lakeshore Investments, LLC v. Fleming* (2013) 217 Cal.App.4th 770. [¶] When the delay has to be extreme or unreasonable, it operates as a waiver. *Liberty Nat. Enterprises, L.P. v. Chicago Title Ins. Co.* (2011) 194 Cal.App.4th 839, 845. Coldren waited months before raising this issue."

After oral argument, however, the court reversed its tentative ruling: "The Motion to Disqualify Grant, Genovese & Baratta, LLP as counsel for [HKC] is GRANTED. The court finds that there exists an actual conflict of interest in representing William R. Hart and [HKC]. Grant, Genovese & Baratta, LLP may continue to represent Defendant William R. Hart in this litigation. The court will select a neutral attorney to represent Defendant and Cross-Complainant [HKC]. Within the next ten days, the parties shall meet and confer regarding the selection of a neutral attorney. If a neutral attorney is not selected, the court will appoint one. [¶] Although Attorney Coldren apparently resigned as an officer and director of the law corporation, he is still a 50% owner of

6

[HKC]. This litigation seeks to dissolve involuntarily the law corporation. In the Cross-Complaint, the law corporation sued Coldren on five of the seven causes of action." The court then launched into a detailed discussion of *Gong v. RFG Oil, Inc.* (2008) 166 Cal.App.4th 209 (*Gong*) and *Havasu Lakeshore Investments, LLC v. Fleming* (2013) 217 Cal.App.4th 770, 773 (*Havasu*), after which it concluded, "The issue whether Coldren resigned as a director and officer of the corporation has little bearing on the issue. Although he did not sign the formal notice, the December 20, 2012 indicated [*sic*] that he resigned. Even so, in *Gong*, the minority shareholder had also resigned his position as a corporate officer. The conflict analysis was not dependent on his status as a corporate officer." The court also found that the two-month delay between Grant Genovese appearing in the action and Coldren filing the disqualification motion was "not sufficient to constitute a waiver of the right to object." HKC and Hart appealed from the disqualification order.

In addition to the appeal, HKC and Hart petitioned this court for a writ of supersedeas to stay the trial court proceedings. We issued a temporary stay and subsequently determined that the disqualification order was automatically stayed by the filing of the notice of appeal. We subsequently modified the stay order to encompass all proceedings in the trial court, including, but not limited to, the disqualification order.

DISCUSSION

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's

7

discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143-1144.) The only factual issue resolved by the trial court here was that Coldren resigned as a director and officer. The trial court ultimately decided that fact was irrelevant. Accordingly, we will review the court's order independently.

Hart and HKC raise two issues on appeal. First, they contend Coldren had no standing to object to the dual representation of Hart and HKC by Grant Genovese. Second, they contend there was no disqualifying conflict between them. We agree on both fronts.

*Coldren Has Not Shown he has Standing to Disqualify Defendants' Counsel*

"Standing generally requires that the plaintiff be able to allege injury, that is, an invasion of a legally protected interest. [Citation.] A 'standing' requirement is implicit in disqualification motions. Generally, before the disqualification of an attorney is proper, the complaining party must have or must have had an attorney-client relationship with that attorney." (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1356.) "'The burden is on the party seeking disqualification to establish the attorney-client relationship.'" (*Shen v. Miller* (2012) 212 Cal.App.4th 48, 56-57.)

Here, it is undisputed that Coldren never had an attorney-client relationship with Grant Genovese. Nonetheless, Coldren contends he has standing under the holding of *Blue Water Sunset, LLC v. Markowitz* (2011) 192 Cal.App.4th 477 (*Blue Water*).

In *Blue Water* a member of a limited liability company (LLC), who owned 50 percent of the LLC, filed an action against the other 50 percent owner. The plaintiff

8

alleged causes of action for dissolution of the LLC, breach of contract, breach of fiduciary duty, and fraud. Allegedly the defendant member misappropriated income and real estate belonging to the LLC for his own benefit and for no consideration. Because the claims were derivative in nature, the plaintiff named the LLC as a nominal defendant. (*Id.* at p. 482.) The attorney for the defendant member filed a demurrer on behalf of not only the member, but also the LLC. (*Id.* at p. 483.) The demurrer was sustained, the result being that some, but not all, of the plaintiff's claims were dismissed. (*Id.* at p. 484.) Plaintiff subsequently brought a motion to disqualify defendant's counsel on the ground that he represented both the LLC and the defendant member, whose interests were adverse. The trial court denied the motion. (*Ibid.*)

On appeal, the court first addressed the standing issue and acknowledged that the plaintiff member did not have standing under the usual rule because plaintiff never had an attorney-client relationship with the defendant's attorney. (*Blue Water*, *supra*, 192 Cal.App.4th at p. 485.) Nonetheless, it made an exception on the facts of the case before it, finding the plaintiff had "vicarious standing" through the LLC because, "[A]ny other rule would run the risk of rendering an organization defenseless when it is most vulnerable, i.e., when it is represented by an attorney who has a conflict because he also represents and is beholden to a company insider who injured the company." (*Id.* at p. 486.) The court framed the exception as follows: "If an attorney simultaneously represents a limited liability company and a member with conflicting interests in a derivative action filed by the second and only other member, and if the limited liability company's consent to concurrent representation is required by California State Bar Rules of Professional Conduct rule 3–310, the second member has vicarious standing to move to disqualify." (*Id.* at p. 481, fn. omitted.)

We have no qualms with the exception announced in *Blue Water* as it flows naturally from the well-established rule that forbids dual representation of a company and company insiders in the context of a derivative action. (*Forrest v. Baeza* (1997) 58

9

Cal.App.4th 65, 74 ["Current case law clearly forbids dual representation of a corporation and directors in a shareholder derivative suit, at least where, as here, the directors are alleged to have committed fraud"].) If, in that context, the plaintiff had no standing to bring a disqualification motion, then no one would, because the only parties with standing would be the defendant flouting the rule and the company the defendant controls.

Contrary to Coldren's assertions, however, his complaint is not a derivative action. Coldren has made direct claims against HKC and seeks $8 million in damages from HKC. If he prevails, the damages will not go to the benefit of HKC; quite to the contrary, HKC will have to pay the damages to Coldren. (Cf. *Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1114 ["If successful, a derivative claim will accrue to the direct benefit of the corporation and not to the stockholder who litigated it"].) Coldren's lawsuit is not a derivative suit in any sense.

Coldren attempts to analogize his lawsuit to a derivative suit by noting that in his dissolution claim he alleges "persistent and pervasive fraud, mismanagement, [and] abuse of authority . . . ." This allegation is entirely conclusory, however — there are no facts alleged to support such a claim. And absent a factual scenario suggesting a conflict exists, an involuntary dissolution action does not necessarily pit the corporation against the defendant owner in the manner of a derivative action. To the extent HKC has any interest at all in the outcome of the dissolution action, its interest is in its continued existence. If Hart also wants HKC to continue, then there is no conflict. Illustrating this point, Corporations Code section 2000, subdivision (a), permits HKC to elect to buy out Coldren's shares and specifically provides that this election "may be made by the approval of the outstanding shares [i.e. Hart] [citation] *excluding* shares held by the moving parties [i.e. Coldren]." (*Ibid.*, italics added.) In other words, at that stage, Coldren's interests are irrelevant and HKC's interests are whatever Hart chooses to do — there can be no conflict. And that is precisely the stage this lawsuit is in. If, on the other

10

hand, Hart does not want HKC to continue by declining the purchase of Coldren's shares at the appraised price under Corporations Code section 2000, then the shareholders unanimously agree HKC should be dissolved and HKC's interests fall by the wayside.[5] Thus a dissolution cause of action does not, by its nature, create the sort of conflict a derivative action creates.

It may be that in the course of determining the appraised value of the shares, or in the course of winding up the affairs of HKC, Hart will direct HKC to do some action that benefits him to the detriment of HKC, such that a *Blue Water* type exception to the standing requirement would be necessary. But no such circumstances are in the record before us, and this concern is too vague and speculative to amount to even a potential conflict. (See *Havasu*, *supra*, 217 Cal.App.4th at p. 779 [a "potential" conflict is an identifiable conflict that is reasonably likely to occur; "a mere *hypothetical* conflict is insufficient"].) Coldren's dissolution claim, therefore, did not confer vicarious standing to object to Grant Genovese's dual representation.[6]

Coldren's only other argument is that *Hart* asserted a derivative claim in the cross-complaint. And indeed, he did. But, aside from the fact that the "derivative" label appears to be improper — HKC is, after all, a named cross-complainant and under the control of Hart — that fact is legally irrelevant. As we noted above, the whole point of the *Blue Water* exception is to give the *plaintiff* standing for the purpose of preventing

[5] We note that even if Hart prevails on the involuntary dissolution action, Coldren can still force Hart's election either to purchase Coldren's shares or to allow the dissolution to proceed because Coldren can simply vote his 50 percent interest to cause a voluntary dissolution of HKC. (Corp. Code, § 1900, subd. (a).)

[6] To be clear, we do not hold that a dissolution action could *never* result in the sort of vicarious standing announced in *Blue Water*. It may well be that a particular factual scenario could give rise to a need for that sort of exception. But given that Coldren's allegations are conclusory in nature, we hold only that a dissolution action does not *per se* give rise to vicarious standing.

11

the defendant wrongdoer from flouting the rule prohibiting dual representation in a derivative action. *Hart* is the plaintiff in his derivative claim, and, according to the allegations, *Coldren* the wrongdoer. Both Hart and HKC are aligned in wanting that claim to prevail. The actual conflict would be between Coldren and HKC, but they are not the parties being jointly represented by Grant Genovese. Accordingly, we conclude Coldren did not have standing to object to Grant Genovese representing both Hart and HKC.

*There is No Actual Conflict Between Hart and HKC*

In addition to the fact that Coldren lacks standing, we agree with Hart that there is no actual conflict between Hart and HKC.

We begin by setting forth the legal principles governing the disqualification of an attorney based on a conflict. "'A conflict of interest exists when a lawyer's duty on behalf of one client obligates the lawyer to take action prejudicial to the interests of another client; i.e., "when, in behalf of one client, it is his *duty to contend for that which duty to another client requires him to oppose*."'" (*Havasu*, *supra*, 217 Cal.App.4th at p. 778.) Rule 3-310(C), of the California State Bar Rules of Professional Conduct[7] states, "A member shall not, without the informed written consent of each client: [¶] (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or [¶] (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict . . . ." Rule 3-600(E), governs how an organization gives informed consent in this context: "A member representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of rule 3-310. If the organization's consent to the dual representation is required by rule 3-310, the

_____

[7] All further references to rules are to the California State Bar Rules of Professional Conduct.

12

consent shall be given by an appropriate constituent of the organization other than the individual or constituent who is to be represented, or by the shareholder(s) or organization members."

The State Bar of California Standing Committee on Professional Responsibility and Conduct (the committee) issued formal opinion No. 1999–153 (Formal Opinion No. 1999-153), in which it interpreted these rules in almost identical circumstances to this case to determine whether an attorney may jointly represent the company and the defendant shareholder. The hypothetical facts were that "Corporation has two shareholders, A and B. A is the corporate president and CEO, who is authorized to oversee Corporation's daily business affairs. A is also authorized under Corporation's articles of incorporation and bylaws to retain legal counsel for Corporation and oversee legal counsel's representation of Corporation. [¶] A and B disagree on the important issue of whether Corporation should adopt a policy of distributing earnings generously, rather than reinvesting them as it has done for many years. Frustrated by the disagreement over this important policy decision, B files a lawsuit against Corporation and against A individually. A seeks to retain Attorney to defend both A and Corporation in B's lawsuit. At the time of the engagement, Attorney is not currently and has not previously represented Corporation as to the subject matter of the dispute. In addition, Attorney has not previously represented Corporation in any matter." (Formal Opinion No. 1999-153.)

The committee noted that a corporate counsel's duty is to the corporation, and that "a lawyer is not prohibited from taking actions on behalf of the corporation that negatively impact the interests of a shareholder or other constituents." (Formal Opinion No. 1999-153; see rule 3-600(A) ["In representing an organization, a member shall conform his or her representation to the concept that the client is the organization itself, acting through its highest authorized officer, employee, body, or constituent overseeing the particular engagement"]; *Skarbrevik v. Cohen, England & Whitfield* (1991) 231

13

Cal.App.3d 692, 704 ["corporate counsel's direct duty is to the client corporation, not to the shareholders individually, even though the legal advice rendered to the corporation may affect the shareholders"].)

Based on these principles, the committee concluded an attorney "may ethically represent Corporation and A in B's lawsuit. Attorney may jointly represent Corporation and A only for so long as the following two conditions are met. First, Attorney can simultaneously represent the two so long as the corporation and A do not have opposing interests in the lawsuit which the attorney would have a duty to advance simultaneously for each. [Citations.] Second, Attorney must conform his representation of the corporation to the requirements of rule 3-600. As an adversary of Corporation in the lawsuit, B is not entitled to the assistance of Corporation's counsel in connection with the litigation. At the same time, the rules that allow a corporation's lawyer to take action on the corporation's behalf which negatively impact a constituent remain applicable." (Formal Opinion No. 1999-153.)

The committee also addressed the question of who should give informed consent if it is required under rule 3-310. (Formal Opinion No. 1999-153) Under rule 3-600(E), if consent is required by rule 3-310, "the consent shall be given by an appropriate constituent of the organization other than the individual or constituent who is to be represented, or by the shareholder(s) or organization members." (Formal Opinion No. 1999-153.) The committee noted that while the "appropriate constituent" could not be A in this scenario because A is represented by the attorney, no such restriction exists for the "shareholder(s)," which is vague as to which shareholders would have to consent. (*Ibid.*) The committee concluded, "Under the facts presented where a single attorney is sought to represent jointly both A and the corporation, B is not an appropriate constituent to consent to the joint representation of Corporation and A, because B is an opposing party in the lawsuit. To conclude otherwise would permit B, the Corporation's adversary in the lawsuit, to dictate how the Corporation would be represented in that proceeding." (*Ibid.*)

14

Instead, A is the appropriate person to consent: "Attorney may obtain Corporation's consent to the joint representation from A under the second of the two approaches set forth in the rule. Under the facts presented, A may consent to the joint representation for the Corporation because (1) A is the only other shareholder, and (2) as president of Corporation, A is authorized to retain counsel for the Corporation and oversee the representation of the Corporation by that counsel."[8]

The committee's opinion is on all fours with the case before us, and we find its reasoning persuasive. The question is, therefore, do Hart and HKC "have opposing interests in the lawsuit which the attorney would have a duty to advance simultaneously for each." (Formal Opinion No. 1999–153.) Coldren has not identified any such opposing interests. He points vaguely to the fact that he is a 50 percent shareholder, but as the foregoing principles make clear, Grant Genovese's duty is to HKC, not its shareholders, and HKC is free to defend Coldren's lawsuit and assert relevant counterclaims. Similarly, though the trial court drew the conclusion that there was an actual conflict between Hart and HKC, it never described what that conflict is. We detect no conflict.

In concluding otherwise, both Coldren and the trial court relied primarily on the holding of *Gong, supra*, 166 Cal.App.4th 209, which we find distinguishable. There the plaintiff owned 49 percent of a corporation and the defendant stockholder 51 percent. (*Id.* at p. 212.) After the two had a falling out, the corporation terminated the plaintiff's employment and forced his resignation from the board. The plaintiff sued the defendant shareholder and the corporation, seeking, *inter alia*, involuntary dissolution of the corporation, wrongful discharge, and breach of fiduciary duty. (*Ibid.*) A single firm represented both defendants. The plaintiff moved to disqualify the firm from

---

[8] We note that the formal opinion concludes by observing that the opinion is not binding on the courts. We, nonetheless, find it persuasive.

15

representing the corporation.  The trial court denied the motion, and the plaintiff appealed.  (*Id.* at p. 213.)

The Court of Appeal reversed for two reasons.  First, plaintiff had alleged that defendant shareholder had wrongfully conducted the affairs of the corporation to further his own interests by, for example, using corporate funds to pay down loans in defendant shareholder's own name.  (*Gong, supra*, 166 Cal.App.4th at p. 216.) "Although [plaintiff] has not yet filed a derivative claim seeking damages on behalf of the corporation (which [defendants] admit would require [the firm's] disqualification), [plaintiff's] complaint alleges damage to [the corporation] through [the defendant shareholder's] personal use of corporate funds, and the dissolution claim threatens its corporate existence."  (*Ibid.*)  Second, the corporation had filed a cross-complaint against the plaintiff for, among other things, fraud and breach of fiduciary duty.  "The cross-complaint raises a concern that [defendant shareholder] is using [the corporation] as a pawn in his dispute with [plaintiff], possibly to [the corporation's] detriment.  Under these circumstances, [the firm] cannot satisfy its undivided duty of loyalty to both [defendants]."  (*Ibid.*)

In our view, *Gong* should be read for the narrow proposition that where a plaintiff's allegations are essentially derivative in nature, the failure to label them as such may still prohibit dual representation of the corporation and defendant shareholder.  Here, Coldren's lawsuit is not derivative in nature.  And as for the potential for using the corporation as a "pawn" against the plaintiff shareholder, that is mere speculation.  At the outset of the case, it is equally likely that the corporation's cross-complaint is righteous and the disqualification motion was brought for improper reasons of harassment or delay.[9]

---

[9] *Gong* also mentioned in passing the fact that "the dissolution claim threatens [the corporation's] existence."  (*Gong, supra*, 166 Cal.App.4th at p. 216.)  As we explained above, however, this does not necessarily create a conflict.

## DISPOSITION

The order disqualifying Grant Genovese from representing HKC is reversed.  The stay order is dissolved upon issuance of the remittitur.  The petition for writ of supersedeas is dismissed as moot.  Hart and HKC shall recover their costs incurred on appeal.[10]

IKOLA, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

THOMPSON, J.

---

[10] Coldren filed two motions to dismiss the appeal.  The first was based on the technicality that Hart and HKC included most of the relevant documentation in their petitioner's appendix submitted with their petition for writ of supersedeas, as opposed to a separate and redundant appellant's appendix.  That motion and its accompanying request for sanctions is denied.  In the interests of the environment and our limited storage space, we prefer not to have redundant appendices.  The second motion argued the appeal had become moot because separate counsel already substituted in for HKC in the trial court.  That motion is also denied.  HKC was faced with a valid court order with which it had to comply.  The fact that Hart and HKC prosecuted their appeal is sufficient indication that they would prefer to have Grant Genovese represent both parties and that they continue to feel aggrieved by the court's order.

17

Filed 8/5/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT S. COLDREN, as Trustee, etc., et al.,<br><br>    Plaintiffs, Cross-defendants and Respondents,<br><br>        v.<br><br>HART, KING & COLDREN, INC., et al.,<br><br>    Defendants, Cross-complainants, and Appellants. | G050202<br><br>(Super. Ct. No. 30-2014-00697576)<br><br>O R D E R |

Grant, Genovese & Baratta on behalf of Appellants and the Law Offices of Joel F. McIntyre have requested that our opinion filed on July 13, 2015, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The requests are GRANTED.

The opinion is ordered published in the Official Reports.

IKOLA, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.