Filed 2/17/26  Kolchinsky v. Power Architects Corp. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ALEXANDER KOLCHINSKY,<br><br>   Plaintiff and Appellant,<br><br>   v.<br><br>POWER ARCHITECTS<br>CORPORATION,<br><br>   Defendant and Respondent. | H052610<br>(Santa Clara County<br> Super. Ct. No. 20CV368701) |

Alexander Kolchinsky, Larry Gilberg, Alexander Mednik, and Mark Kesel all hold shares in Power Architects Corporation.  The five parties arbitrated a complex dispute involving the company.  That arbitration resulted in an award that required Kolchinsky and Gilberg to pay Power Architects, declared that they held fewer shares than they claimed, and rejected their affirmative claims.  Kolchinsky and Gilberg separately moved to vacate or correct the award and now separately appeal the trial court's judgment confirming the award.  Here, we will affirm the judgment against Kolchinsky.

# I.    BACKGROUND

## A.    *Commencement and Consolidation of Arbitration*

Kolchinsky sued Mednik and Kesel for declaratory relief as to Kolchinsky's claimed shares in Power Architects.[1]  Mednik and Kesel successfully compelled Kolchinsky to arbitrate his claim.

Mednik, Kesel, and Power Architects also demanded arbitration of claims against Kolchinsky and Gilberg and of Gilberg's claims against Power Architects, Mednik, and Kesel.  The consolidated arbitration was conducted by a three-judge panel of the American Arbitration Association (AAA).

## B.    *AAA Findings and Award[2]*

Power Architects sells configurable and custom power supplies.  Power Architects was founded by Gilberg and Mednik.  Kolchinsky, Gilberg's close friend, helped set up the business.  Power Architects was first incorporated in Delaware in 1997 but reincorporated in California in 1998.

Commencing in 1998, Gilberg, Mednik, and Kesel were all members of the Power Architects board.  Gilberg was also the company's Chief Executive Officer (CEO) and secretary from 1998 until February 2019, when Mednik and Kesel voted to remove Gilberg as a director and eliminated the CEO position.  Mednik was the company's president from its founding until December 2019.  Kolchinsky served as a director to represent Gilberg's interests from the date of Gilberg's removal until 2021.  In 2020, Power Architects reinstated the CEO position and appointed Vlad Pystin in that role.  Pystin was not a shareholder.  In 2021, Pystin replaced Kolchinsky on the board.

---

[1] The suit initially included Gilberg as plaintiff, Power Architects as a defendant, and additional claims; Gilberg withdrew his claims and Kolchinsky filed an amended complaint with a single declaratory relief claim against Mednik and Kesel.  Gilberg also filed another suit, which he was separately compelled to arbitrate.

[2] We draw this background from the AAA award.

Three successive shareholders' agreements were entered in 1998, the " 'May Agreement,' " " 'July Agreement,' " and " 'August Agreement.' " The May Agreement, signed by Gilberg, Mednik, and Kolchinsky, allocated 45,000 shares each to Gilberg and Mednik and 10,000 shares to Kolchinsky. It appointed Gilberg as CEO, Mednik as president, and Kolchinsky as vice-president and secretary. The July Agreement, entered in conjunction with receipt of funding from three individuals comprising an investor group, identified five shareholders: Gilberg with 55,000 shares, Mednik with 45,000 shares, Kesel with 15,300 shares, Oleg Sagodeev with 15,300 shares, and Boris Kesil with 3,400 shares. The five identified shareholders signed the July Agreement. Kolchinsky was not mentioned in the July Agreement and did not sign it. The August Agreement was executed by the five signatories to the July Agreement. The August Agreement was substantially the same as the July Agreement, except that Gilberg and Mednik each were allocated 50,000 shares.

Of the three, AAA ruled that "the August Agreement governs the parties' rights and obligations and is the operative agreement for all practical purposes." AAA rejected Kolchinsky's contention that he was entitled to 10,000 shares under the May Agreement. But it ruled that Kolchinsky had since acquired 7,210 shares, about half the combined total he claimed. AAA denied various other claims Kolchinsky asserted in the arbitration. AAA ordered Kolchinsky to pay Power Architects $35,786 in incurred and unpaid AAA arbitrator compensation.

## C. *Motion to Vacate and Appeal*

After arbitration, Kolchinsky's declaratory relief suit was consolidated with Gilberg's civil suit. Power Architects moved to confirm the AAA award. Kolchinsky and Gilberg separately moved to vacate and correct the awards. In a single order, the trial court granted Power Architects' motion and denied the motions filed by Kolchinsky and Gilberg. The trial court entered judgment declaring that Kolchinsky owns 7,210 shares

of Power Architects stock and requiring Kolchinsky to pay Power Architects $35,786 plus interest. Kolchinsky timely appealed.[3]

## II.    DISCUSSION

Kolchinsky contends that the trial court should have vacated the arbitration award under Code of Civil Procedure section 1286.2, subdivision (a)(4) because AAA exceeded its powers.[4] Kolchinsky's specific arguments relate to the process for retaining and directing counsel to prosecute Power Architects' claims, Kesel's alleged forfeiture of his shares and associated rights, and the allocation of 10,000 shares to Kolchinsky under the May Agreement. Kolchinsky in our independent judgment supplies no statutory basis to vacate or correct the award.[5]

### A.    *Legal Principles*

Courts generally "cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties." (*Sargon Enterprises, Inc. v. Browne George Ross LLP* (2017) 15 Cal.App.5th 749, 763.) Judicial review of private arbitration awards is limited to enumerated statutory grounds to vacate or correct the award. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 28 (*Moncharsh*).) Kolchinsky invokes section 1286.2's provision for vacatur when "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (§ 1286.2, subd. (a)(4).)[6]

---

[3] The judgment also addressed the dispute between Power Architects and Gilberg. Gilberg appealed separately.

[4] Undesignated statutory references are to the Code of Civil Procedure.

[5] We reach neither Power Architects' contention that certain of Kolchinsky's "specific legal theories" are forfeited on appeal because they were not raised in the trial court nor Kolchinsky's related contention that his reply brief in the trial court was enough to preserve issues for resolution in that forum.

[6] Kolchinsky also invokes section 1286.2, subdivision (a)(5), which provides for vacatur when "[t]he rights of the party were substantially prejudiced by . . . the refusal of

" ' "[A]rbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact." ' " (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 917.) "Arbitrators may exceed their powers by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy" (*id*. at p. 916) or where public policy renders the entire contract containing the arbitration agreement unenforceable (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 73, 80, 87).

While the scope of judicial review of an arbitration award is narrow, our review of the trial court's order confirming the arbitration award is de novo. (See *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9.)

**B.      *Kolchinsky's Motion***

Kolchinsky has moved this court "to determine, as a threshold jurisdictional matter, whether [r]espondents possess the authority to act on behalf of Power Architects." Although reviewing courts must be satisfied of their own jurisdiction before proceeding to the merits (see *Steel Co. v. Citizens for a Better Environment* (1998) 523 U.S. 83, 94–95; *Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 339), Kolchinsky challenges neither the trial court's jurisdiction to review the arbitration award nor our jurisdiction to review the trial court's judgment. Indeed, it is our jurisdiction that he is invoking, as the appellant, much as he sought the trial court's jurisdiction to review the arbitration award. Rather, Kolchinsky's motion is an unauthorized supplemental brief on the merits of his argument that the arbitration award was in excess of AAA's powers. The motion is denied.

---

the arbitrators to hear evidence material to the controversy." But he does not identify evidence that AAA refused to hear. His argument appears to be that AAA's legal analysis was flawed because it deemed a factual dispute immaterial, not that it refused to hear the evidence on both sides of that dispute.

5

## C. *Kolchinsky's Requests for Judicial Notice*

Kolchinsky filed in this court three requests for judicial notice,[7] each of which we grant only in part.

Under Evidence Code section 451, we take judicial notice of the existence and content of documents filed in the trial court in this case before judgment that are not otherwise in the appellate record.[8] (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3; see also *Estate of Sanchez* (2023) 95 Cal.App.5th 331, 336, fn. 5 [explaining that courts have "discretion to augment the record with materials that were before the trial court when it issued the order on appeal"].) But our judicial notice is limited to the existence of each document in the court file and does not extend to the truth of hearsay statements within those documents. (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882.) Nor will we take judicial notice of evidence not presented to the trial court, because Kolchinsky has not

---

[7] Kolchinsky filed his first request for judicial notice with his opening merits brief. He filed the other two between the filing of his opening brief and Power Architects' response brief. In his second request for judicial notice, Kolchinsky requested judicial notice of all matters for which Gilberg requested judicial notice in Gilberg's separate appeal, through motions Gilberg filed on April 8, 2025, May 1, 2025, and May 8, 2025. We deferred ruling on all three requests for consideration with the merits. Kolchinsky's unopposed motion to strike the untimely oppositions to the first two requests for judicial notice is granted.

[8] Our grant of judicial notice is limited to: (1) Excerpts from the July 24, 2020 complaint Gilberg filed in what is now the lead case in the consolidated trial court proceeding; (2) the October 5, 2020 Pystin declaration filed in the same suit; (3) excerpts from the October 26, 2020 complaint Kolchinsky and Gilberg filed in this action; (4) an excerpt from a brief filed in the trial court regarding the petition to vacate; and (5) excerpts from the April 4, 2024 Gilberg declaration. The requests are otherwise denied.

shown any exceptional circumstance that would warrant our taking so extraordinary a measure.[9] (See *In re K.M.* (2015) 242 Cal.App.4th 450, 456.)

**D.     *The Scope of Arbitration***

Under the May Agreement, "[s]hould any dispute arise between any one or more of the parties to this agreement as to their rights under any provisions of this agreement, the parties . . . agree to refer such dispute to [AAA], whose decision on the questions shall be binding on the parties and shall be without appeal."  The trial court ruled that this dispute resolution provision constituted an agreement to arbitration and that Kolchinsky's single claim for declaratory relief of his shareholder status fell within the agreement's scope.  (See generally *Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 687 [explaining that courts ruling on arbitration petitions assess "whether an agreement to arbitrate exists [citations] and, if so, whether the parties' dispute falls within the scope of that agreement"].)

The trial court reserved for arbitral determination whether other provisions of the May Agreement may have been "superseded or rescinded by operation of law or the parties' conduct."  (See *Heimlich v. Shivji* (2019) 7 Cal.5th 350, 358 [acknowledging an arbitrator's general " 'authority to find the facts, interpret the contract, and award any relief rationally related to [these] factual findings and contractual interpretation' "].) Kolchinsky misconstrues the order compelling arbitration as establishing that *all* the provisions in the May Agreement were enforceable, even though the trial court expressly refused to reach the latter question.

---

[9] Beyond documents never presented in the trial court, Kolchinsky's requests for judicial notice also extend to various authorities and facts derived from the appellate record, including of documents already in the appellate record.  We thus deny these requests as at best superfluous and, alternatively, as unauthorized supplemental briefing on the merits.

As a corollary to his all-or-nothing view of the May Agreement, Kolchinsky contends that AAA undermined its own jurisdiction by ruling that the May Agreement was superseded by the August Agreement and rejecting his claim to shares under the May Agreement. Not so. AAA ruled that the August Agreement "governs the parties' rights and obligations and is the operative agreement *for all practical purposes*." (Italics added.) But it stopped short of ruling that the August Agreement superseded the May Agreement's dispute resolution provision. AAA's practical purposes did not extend to reviewing, let along contradicting, the trial court's ruling that the dispute resolution provision in the May Agreement remained effective to compel Kolchinsky to arbitrate his claimed rights under the August Agreement. Indeed, AAA's finding that Kolchinsky executed the May Agreement is consistent with the trial court's application of the arbitration provision in that agreement. Kolchinsky, whose substantive claim regarding his status as a shareholder relies on the continued effectiveness of the May Agreement, does not dispute the existence of the May Agreement or that its dispute resolution provision encompasses disputes concerning his rights under the agreement.

**E.**     *Appointment of Pystin and Retention of Michael Martinovsky*

Recognizing that AAA rejected challenges to Pystin's appointment as CEO or Power Architects' retention of Martinovsky, Kolchinsky contends that AAA's rulings on these matters justify vacating the arbitration award as inconsistent with the shareholders' agreements and public policy ensuring that corporate counsel remains neutral in shareholder disputes. In support, Kolchinsky first posits that the May Agreement and August Agreement prevented Pystin from serving as CEO because Pystin was not a shareholder; from this Kolchinsky asserts that Pystin lacked authority to retain Martinovsky to represent Power Architects in arbitration. These arguments rest on Kolchinsky's fundamental disagreement with AAA's construction of the shareholders' agreements. But AAA did not exceed its power in adopting an interpretation at odds with Kolchinsky's.

8

The May Agreement contained a provision appointing Gilberg, Mednik, and Kolchinsky as officers of the corporation for so "long as [they] remain[] . . . shareholders and perform faithfully, efficiently, and competently for the Corporation." The same provision stated that if any of them ceased to be a shareholder, that person "shall submit . . . [their] resignation as an officer when [they] transfer[] [their] shares." We accept Kolchinsky's assertion that the August Agreement has an analogous provision.[10]

Kolchinsky's arguments rest on the premise that this agreement by Gilberg, Mednik, and Kolchinsky to condition their own appointment as officers on shareholder status also limited Power Architects' appointment of any successor officers like Pystin. AAA interpreted the provision differently, ruling that it did "not prohibit the appointment of non-shareholders as officers." Even if AAA's interpretation of the provision were subject to judicial review, we see in the provision's plain language no restriction on the potential pool from which *future* officers may be selected.[11]

Kolchinsky asserts that Power Architects is foreclosed from relying on AAA's interpretation of the provision, based on purported admissions by Pystin and Martinovsky that only shareholders could serve as officers. But like the May Agreement itself, the declarations Kolchinsky relies on merely recite that the officers appointed under that agreement—Gilberg, Mednik, and Kolchinsky—would be shareholders; they do not say that only shareholders could be appointed as officers in the future.

---

[10] The August Agreement is not part of the record in Kolchinsky's appeal. But the trial court order compelling Gilberg to arbitrate his employment claims describes an analogous provision in the August Agreement as a basis for compelling Gilberg to arbitrate his claim for wrongful termination. AAA interpreted the relevant provision of the August Agreement in its ruling.

[11] We reject the premise of Kolchinsky's related argument that AAA was bound to enforce the provision as Kolchinsky understands it because the trial court adopted that construction when it compelled Gilberg to arbitration. The trial court did not adopt Kolchinsky's construction; it left the proper construction of the provision to AAA.

We understand Kolchinsky's challenge to Martinovsky's retention to be derivative of his challenge to Pystin's appointment, so as AAA determined, it fails for the same reason.

Kolchinsky argues that Martinovsky's representation of Power Architects in an arbitration against two shareholders is against a public policy requiring corporate counsel to remain neutral in shareholder disputes. This was more than a shareholder's disagreement with management of the corporation: The parties' dispute involved Gilberg's employment claims against the company, the company's fraud claims against Gilberg, and the company's request for a declaration regarding allocation of its shares. In arbitration, in the trial court, and on appeal, Martinovsky represented only the company. We cannot identify a public policy or conflict of interest that precludes his representation of Power Architects. (See *Coldren v. Hart, King & Coldren, Inc.* (2015) 239 Cal.App.4th 237, 249 [explaining that counsel representing an organization treats the organization itself as the client]; Rules Prof. Conduct, rule 1.13(a) ["A lawyer employed or retained by an organization shall conform his or her representation to the concept that the client is the organization itself, acting through its duly authorized directors, officers, employees, members, shareholders, or other constituents overseeing the particular engagement"].)

Kolchinsky also contends that (1) Martinovsky falsely asserted that Kolchinsky had not challenged Martinovsky's status as counsel,[12] and (2) in the trial court, Martinovsky misrepresented AAA's findings about Kesel's alleged bankruptcy fraud. Kolchinsky neither substantiates his claims with competent evidence nor persuasively explains how his claims, if substantiated, would be a basis for reversal.

---

[12] In support, Kolchinsky cites handwritten notes of Martinovsky's statement to a Power Architects' expert witness at a hearing.

### F.     *Kesel's Shareholder Status*

In arbitration, Kolchinsky unsuccessfully claimed that Kesel in purchasing his shares laundered the proceeds of criminal activity and fraudulently concealed his shares from criminal forfeiture and a bankruptcy proceeding.  Kolchinsky contends that AAA's award should be vacated because it validated unlawful conduct by Kesel, thereby contravening public policy.  We disagree.

AAA's analysis of the impact of the federal proceedings on Kesel's status as a shareholder was within the scope of its power as the arbiter of his rights under the August Agreement.  AAA did not decide in the first instance whether Kesel's shares should be forfeited to the federal government, whether Kesel's shares should be included in a bankruptcy estate, or whether Kesel could or should be prosecuted for the fraud that Kolchinsky alleges.

In some tension with the general course of his argument, Kolchinsky argues that AAA had to assess whether Kesel acted with a culpable mens rea when he disclosed assets for the purpose of the federal criminal proceeding and the bankruptcy.  But AAA was assessing whether Kesel's shares had in fact been forfeited, not whether Kesel had committed uncharged federal offenses or whether federal prosecutors should have taken Kesel's shares from him.

Kolchinsky's remaining arguments boil down to his assertion that AAA reached the wrong result—it should have concluded that Kesel had forfeited his shares in the federal criminal proceedings or the bankruptcy.  This is a quintessential determination of a mixed question of fact and law, which we may not review for error.  (See *Moncharsh*, *supra*, 3 Cal.4th at p. 11.)

### G.     *AAA's Determination of the Merits*

Kolchinsky contests AAA's resolution of his shareholder status.  As a shareholder under the May Agreement, he contends that AAA's determination that the May Agreement was superseded by the August Agreement is contrary to the May Agreement's

11

express terms and thus beyond the scope of AAA's authority. AAA did not exceed its authority by addressing that issue: As we have explained, Kolchinsky's claim that he is entitled to shares by the May Agreement is within the scope of that agreement's arbitration provision.

Nor does AAA's determination of Kolchinsky's claim otherwise implicate any statutory ground for correction or vacatur. AAA interpreted the May Agreement to be modifiable by mutual consent "without a writing" and found Kolchinsky's claim to 10,000 shares under the May Agreement barred by the statute of limitations or laches. Whatever the merits of this analysis, we reject Kolchinsky's suggestion that it exceeded the scope of AAA's authority, and we do not review the sufficiency of the evidence supporting AAA's award. (See *Moncharsh*, *supra*, 3 Cal.4th at p. 11.)

## H.  *Sanctions*

We exercise our discretion to deny both sides' cross-motions for sanctions, filed after merits briefing was complete. Section 907 and California Rules of Court, rule 8.276(a)(1) permit us to award sanctions "when an appeal is frivolous and taken solely to cause delay." (*Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1194.) But " '[a]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.' " (*Ibid*.) The distinction between meritless and frivolous appeals is " 'vague,' " and "punishment should be used most sparingly to deter only the most egregious conduct" to avoid "chilling . . . the assertion of litigants' rights on appeal." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650–651.)

To be sure, Kolchinsky has not prevailed, but we cannot say he prosecuted his claims for an improper motive. And while we hold Kolchinsky to the same standard as a represented litigant, we are not indifferent to the difficulty of navigating the appellate

process without counsel.  (See *Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1285.) So we decline to impose sanctions on Kolchinsky, either for his unsuccessful appellate arguments or for his motion practice.

Nor do we view Power Architects' motion for sanctions as sanctionable conduct: On the merits of Kolchinsky's appeal, Power Architects has decidedly prevailed.  We accordingly deny Kolchinsky's motion for sanctions (and acknowledge the forbearance from any reciprocal sanctions-on-sanctions motion by Power Architects).

### III.    DISPOSITION

The judgment is affirmed.

_____
LIE, J.

WE CONCUR:

_____
GROVER, Acting P. J.

_____
WILSON, J.

*Kolchinsky v. Power Architects Corporation*
H052610