Filed 5/23/22  Malan v. Katto CA4/1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| NINUS MALAN, Cross-complainant and Respondent, v. WAFA KATTO, Cross-defendant and Appellant. | D077602 (Super. Ct. No. 37-2019-00029739-CU-OR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Law Offices of Douglas Jaffe and Douglas Jaffe for Cross-defendant and Appellant.

Noonan Lance Boyer & Banach, James R. Lance, Ethan T. Boyer, Genevieve M. Ruch; Demergian Law and David Demergian for Cross-complainant and Respondent.

A lender sued to foreclose on a property over which Wafa Katto and Ninus Malan disputed each other's ownership interest and entitlement to collect rents.  Katto and Malan filed cross-complaints against each other seeking (among other things) to quiet title and obtain an accounting of the

other's finances. Malan moved to disqualify Katto's trial counsel, Douglas Jaffe, on the basis Jaffe had previously represented Malan (individually and through a company Malan claimed to own) in several prior lawsuits and acquired confidential information about Malan's finances and litigation philosophy. The trial court granted Malan's motion.

Katto contends the trial court erred by granting Malan's disqualification motion because there is not a substantial relationship between the matters in which Jaffe previously represented Malan and the present action. We disagree. Although information about a former client's general litigation philosophy ordinarily is insufficient to disqualify an attorney from later representing a party adverse to the former client, Malan met his burden here by establishing Jaffe obtained confidential information about Malan's finances that is material to Katto's current cause of action for an accounting.

Accordingly, we affirm the trial court's order granting Malan's disqualification motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Complaint

In June 2019, lender HS Independence LLC (Lender) sued Katto and Malan to foreclose on a residential triplex (the Property). Lender alleged that, in 2017, it loaned $300,000 to Katto to purchase the Property, and Katto executed a corresponding deed of trust. Lender further alleged that, after this secured loan transaction, Katto purportedly executed a grant deed conveying the Property to herself and Malan as joint tenants. Lender

2

attached to its complaint copies of the recorded deed of trust and grant deed.[1] Lender alleged Katto and Malan were in arrears on the loan, failed to maintain property insurance, and allowed the Property to fall into disrepair.

## B. Malan's Answer and Cross-complaint

In July 2019, Malan filed an answer to Lender's complaint. He admitted the loan was in arrears, but alleged he "was prevented . . . by other parties" from making payments.

A few days later, Malan filed a cross-complaint against Katto asserting causes of action for quiet title, accounting, partition, and declaratory relief. Malan alleged he and Katto purchased the Property together; Malan provided a $127,000 down payment and Katto obtained a $300,000 loan. Malan further alleged Katto—"acting as an alter ego, straw, or agent on an unascertained third party's behalf"—had assumed "control of the Property since 2017 and has been receiving 100% of the rents and payments from the tenants in the Property, even though she does not own the Property, or alternatively owns only a small portion of it."

## C. Jaffe Appears on Katto's Behalf

On August 30, 2019, Jaffe filed a declaration in the trial court stating he had just been retained "to represent Katto in this matter" and seeking an automatic 30-day extension (Code Civ. Proc., § 430.41) of Katto's answer deadline. Malan nevertheless obtained entry of default against Katto. In a declaration in support of his successful request to vacate the entry of default,

---

[1]     Stamps on the deed of trust and grant deed indicate they were both recorded in the county recorder's office on June 16, 2017 at 9:58 a.m. The stamped document numbers indicate the deed of trust was recorded immediately before the grant deed.

Jaffe stated that, "[u]pon the vacating of the default, Katto will file an Answer and Cross-Complaint against Malan."

### D. Lender's Motion to Appoint a Receiver

#### 1. Lender's Motion

In October 2019, Lender moved the trial court to appoint a receiver to manage the Property. Lender asserted the loan remained in arrears, the property tax was unpaid, neither Malan nor Katto had maintained insurance on the Property, and Lender had to make significant improvements to restore the Property to an insurable state.

In support of its motion, Lender submitted a declaration from Katto stating she "agree[s] that a receiver should be appointed" because "Malan took control of the property away from" her in November 2018 "and he has been receiving 100% of the rental income from the property ever since that date."

#### 2. Katto's Response

Katto also filed her own response to Lender's motion stating she "does not oppose the appointment of a receiver." Katto filed a supporting declaration from her assistant who stated he helped Katto collect rent, maintain the Property, and submit loan payments to Lender from about July 2017 to November 2018. The assistant further stated that in mid-November 2018, he "observed Malan tell the Property tenants that he was the owner of the Property," and they should "stop paying Katto . . . and instead pay the rents to him" or he would evict them. The assistant concluded Malan "has been collecting at least $6,000 to $7,000" in monthly rent since that time and has not been maintaining or repairing the Property.

4

### 3. Malan's Opposition

Malan opposed Lender's motion. He explained that, from about 2009 to 2017, he and a business partner, Salam Razuki, had invested in about 40 to 50 properties together. A friend told Malan about the Property, which Malan saw as an investment opportunity. Razuki wanted to buy the Property through a "straw buyer"—Katto, who was a tenant at one of Razuki's properties—but neither Razuki nor Katto had sufficient funds for the purchase. According to Malan, he and Razuki agreed "that Malan would provide $127,000 of his own money as the down payment with the expectation of 50% ownership, 50% rights to rents and profits, Malan's name on title, and his interest <u>not</u> subject to a deed of trust or promissory note." This explained why only Katto was listed on the deed of trust, but Katto and Malan were both listed on the grant deed.

Malan argued in his opposition that it would be inequitable to appoint a receiver because Lender was "acting as an agent of . . . Razuki, who tried to hire a hit man to murder Malan to take control of Malan's assets, including [the Property]." Malan submitted documents showing Razuki was arrested and charged in federal court with conspiracy to kill in a foreign country and conspiracy to kidnap.

As to the merits of Lender's motion, Malan asserted he had attempted to pay the arrears on the loan, but Lender kept demanding increasingly exorbitant reinstatement amounts.

Finally, Malan stated in a declaration that Katto had "collected 100% of the rent" from the Property "from June 2017 until at least January 2019," yet failed to pay Lender and "intentionally excluded [Malan] from receiving profits from the Property and . . . from enjoying the benefits of ownership."

### 4. Trial Court's Ruling

On November 8, 2019, the court granted Lender's motion and appointed a receiver.

### E. Malan's Motion to Disqualify Jaffe

### 1. Malan's Motion

In the meantime, on October 31, 2019 (about one week before the court granted Lender's motion), Malan moved to disqualify Jaffe as Katto's attorney on the basis Jaffe had previously represented Malan—individually and as the sole member of American Lending and Holdings, LLC (American Lending)—in several matters since 2014. Malan asserted that, "[a]s Malan's attorney for half a decade, Jaffe received substantial confidential information from Malan about his attitudes, philosophy, and strategy towards litigation and settlement, his general business practices, customs, and positions, his financial strengths and weaknesses, and his attitude and tolerance for litigation."

Malan identified two lawsuits in which Jaffe had previously represented him on an individual basis: *Malan v. Sybrandy et al.* (*Sybrandy*) and *Malan v. J. Choo USA, Inc.* (*Choo*).

Malan also identified five lawsuits in which Jaffe represented American Lending, in which Malan asserted he was the sole member: *American Lending v. Gurfinkiel* (*Gurfinkiel*), *American Lending v. Upward Trend* (*Upward Trend*), *Meram v. American Lending* (*Meram*), *American Lending v. Lopez* (*Lopez*), and *American Lending v. Title365 Co.* (*Title365*).

Malan did not describe in his moving papers the subject matter of these lawsuits, but he described the nature of his interactions with Jaffe. Malan's declaration and attached exhibits showed numerous communications

6

between Malan and Jaffe regarding pleadings, discovery, motion practice, and settlement of the cases.

For example, regarding *Sybrandy*, Malan stated, "I worked closely with Jaffe, provided him confidential information about myself and my finances, disclosed my litigation strategy and philosophy to him, and what topics or questions he should ask and which topics, if I am deposed, would be especially embarrassing to me, and indicated where he should object on the grounds of privilege or privacy."

Similarly, in connection with *Gurfinkiel*, Malan stated, "I worked closely with Jaffe in drafting my declaration, and gave him confidential information about the finances of American Lending. Since I am the sole member of American Lending and provide much of its financial support, the confidential information necessarily includes confidential, private information about my own finances, as well."

Additionally, regarding *Lopez*, Malan stated, "I worked closely with Jaffe, providing him confidential information about American Lending, my interest and desire to litigate, and the financial status of American Lending and myself, among many other confidential facts."

Finally, regarding *Title365*, Malan stated, "To help Jaffe draft [a] demand letter, I worked closely with Jaffe and gave him confidential information about American Lending, explained the extent of my interest in and tolerance for litigation and my litigation strategy and beliefs, and disclosed American Lending's and my financial position, among many other confidential facts."

In support of his claim to be the sole member of American Lending, Malan cited several instances in which Jaffe prepared court filings or other documents that identified Malan as a member of American Lending, and

7

showing Jaffe looked to Malan for direction on litigation in which American Lending was a party.

Malan argued the "confidential information Jaffe learned"—which "was extensive and concerned every aspect of Malan's life, including Malan's finances"—was "relevant and material to Jaffe's representation of Katto in the present case" because "Jaffe's knowledge of whether Malan has the finances to litigate, whether Malan is prone to settlement, and what Malan's strengths and weaknesses are in litigation (especially in light of Katto's Cross-Complaint) are advantages to Katto in having Jaffe represent her and disadvantages to Malan as Jaffe's former client."

Malan concluded that, because "there is a 'substantial relationship' between the significant and material confidential information Jaffe received" in his prior representations and the present case, disqualification is required.

### 2. Katto's Cross-complaint Against Malan

On November 15, 2019, before she responded to Malan's disqualification motion, Katto—with Jaffe as her counsel—filed a cross-complaint against Malan asserting causes of action for quiet title, accounting, declaratory relief, civil theft, conversion, indemnity, and contribution.

Katto alleged she had "not knowingly transferred her interest in the Property to Malan," and that the grant deed conveying him a joint tenancy interest in the Property was a forgery. She further alleged "Malan has been deriving income from the Property, such as rents and payments from tenants, without distributing any of it to Katto." Therefore, Katto asserted she "is entitled to an account of Malan's assets and liabilities, bank accounts, rent accounts, and other accounts to determine how much money he derived from the Property, and, therefore, how much money he owes to Katto." She

8

expressly asked the "Court to order an accounting to be performed of Malan's finances, assets, and properties."

Katto later amended her cross-complaint in ways not relevant here.

### 3. Katto's Opposition

On February 6, 2020, Katto filed an opposition to Malan's motion to disqualify Jaffe. Katto raised several challenges.

First, Katto informed the court that another judge in the same court (Judge Sturgeon) had recently denied "essentially the same" motion by Malan seeking to disqualify Jaffe in *Razuki v. Malan et al.* (*Razuki*), which involved Malan, American Lending, and Razuki.[2]

Second, Katto argued there was "no substantial relationship between the cases where Jaffe previously represented Malan or [American Lending] and this action." Katto briefly described the nature of the prior cases:

- *Sybrandy* "was a case by Malan against two other real estate agents alleging interference by those real estate agents with a piece of property Malan was selling as a real estate agent."

- *Choo* "was a case by Malan arising from an expensive, and defective, pair of shoes purchased by Malan for his girlfriend."

---

[2]    Katto acknowledges in her appellate briefing that Judge Sturgeon reconsidered his ruling about one year later (after the ruling at issue in this appeal), but she does not reveal the outcome of that reconsideration. Malan requests that we take judicial notice of Judge Sturgeon's ruling on reconsideration. (Evid. Code, § 452, subd. (d) [courts may take judicial notice of "[r]ecords of . . . any court of this state"].) Katto opposes the request. While we ordinarily do not take judicial notice of matters occurring after the challenged ruling (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2), we will do so here because it appears Katto is alluding to Judge Sturgeon's ruling for its persuasive value. On reconsideration, Judge Sturgeon granted Malan's motion to disqualify Jaffe, finding Jaffe "was privy to Malan's financial information and condition, the litigation strategy preferences and risk tolerances."

9

- *Gurfinkiel* and *Upward Trend* were both filed to enable the filing of a lis pendens and asserted claims by American Lending that Gurfinkiel failed to include American Lending as an owner of properties that were to be jointly acquired.

- *Meram* was essentially an interpleader action in which funds owed to American Lending by a defaulted borrower were deposited with the superior court after the borrower's bankruptcy case was dismissed.

- *Lopez* was an unlawful detainer case in which American Lending obtained a default judgment against the tenant.

- *Title365* "is an ongoing action regarding Title 365's inaccurate abstract of title." Katto asserted this case "would have been settled but for Title 365's hesitancy to pay when there is an ongoing dispute over the ownership of [American Lending]."

Katto asserted "[t]here was nothing in those cases that gave Jaffe confidential information directly at issue or of critical importance in this action" because "[t]hose cases had nothing to do with Katto or the [P]roperty." Thus, she maintained "[n]one of the issues in the [prior actions] are the same or substantially related to this action."

Third, Katto asserted there was a "dispute over ownership of [American Lending]." Whereas Malan claimed he was the sole member of American Lending, Katto claimed Razuki was the sole member. In support of her position, Katto cited a declaration from Jaffe stating, "In my representation of [American Lending], Salam Razuki would direct litigation strategy, not Malan, and I would be paid by [American Lending] or personally by . . . Razuki." Katto also filed a request for judicial notice attaching two declarations from other cases. One declaration was from a corporate attorney who prepared American Lending's operating agreement to provide that Razuki was its sole member. The other declaration was from a broker who loaned money to American Lending who stated "[b]oth Razuki and Malan

10

have always represented . . . that Razuki is the sole member of [American Lending]."[3]

Fourth, Katto argued "Malan's motion should be denied due to his delay in bringing [it]." Katto acknowledged Malan brought the motion within two months of Jaffe's appearance in this case. But Katto pointed out that Malan had not acted diligently in *other* cases in which Jaffe represented Razuki or his business interests adversely to Malan. For example, in *Razuki*, "Malan waited over five months to file his motion." And in three other cases, Malan asserted in 2017 and 2018 that Jaffe had conflicts, yet "never made a motion to disqualify Jaffe."

Finally, Katto argued she would "be substantially prejudiced by having to hire new counsel and bring them up to speed."

In a supporting declaration, Jaffe stated he "was retained by Katto on August 30, 2019" and "had never represented [her] before, and had no prior involvement with the [P]roperty."

#### 4. Malan's Reply

Malan argued in reply that Katto had not (1) refuted his evidence showing that on several occasions "Jaffe received confidential information about Malan during his representation of Malan and American Lending"; (2) presented any authority providing that a two-month delay in moving to disqualify opposing counsel constitutes unreasonable delay; and (3) made a sufficient showing she would be prejudiced if Jaffe were disqualified.

#### 5. Trial Court's Ruling

The trial court issued a tentative ruling granting Malan's motion.[4]

---

[3] Malan objected to the trial court taking judicial notice of the content of declarations filed in other actions.

[4] The tentative ruling is not in the appellate record.

11

At the motion hearing, Jaffe argued that any information he acquired about Malan's "general business practices or litigation philosophy" during prior representations is the type of "playbook" information that does not warrant disqualification. Malan's counsel countered that Jaffe "doesn't deny that he worked with Malan" and "talk[ed] about finances." The court took the matter under submission.

About one week later, the court issued a minute order granting Malan's motion. The court concluded disqualification was required because Malan showed that a substantial relationship existed between the matters in which Jaffe previously represented him and Jaffe's current representation of Katto.

In addressing the matters in which Jaffe had previously represented Malan on an individual basis, the court noted the parties' conflicting views. Whereas Malan asserted that in *Sybrandy* "he disclosed to Mr. Jaffe confidential information about himself and his finances, including his litigation strategy and philosophy," Jaffe countered that " '[t]here was nothing in that litigation that gave [Jaffe] confidential information directly at issue or of critical importance in this action." The court concluded Malan was "not required to show Mr. Jaffe was given 'confidential information directly at issue or of critical importance in this action.' "

Turning to the matters in which Jaffe had previously represented American Lending, the court noted there was a dispute as to whether Malan or Razuki was the sole member.[5] But the court found that, regardless of whether Malan held an ownership interest in American Lending, Jaffe did not deny that Malan was involved in the five cases Malan cited in his motion, or that Jaffe "obtained Malan's confidential information about his finances

---

5    The court took "judicial notice of the existence of the pleadings and papers" filed in other cases, "but not of the factual assertions made therein."

12

and his litigation strategy and philosophy." The court found "Jaffe's subjective statement in his declaration that he did not learn any 'confidential information directly at issue or of critical importance in this action' . . . insufficient to counter Malan's evidence that indicates Mr. Jaffe and Malan had a substantial relationship through direct representation and involvement in litigation involving [American Lending] in various cases."

The court reasoned the confidential information Jaffe obtained about "Malan's finances could be directly material" to the present case because "such information could affect settlement discussions and more."

Regarding Jaffe's claim that Malan unreasonably delayed in bringing the disqualification motion, the court found Malan's two-month delay "was not an extreme delay" and, in any event, "Katto has not demonstrated some extreme consequence from the delay."

## II. DISCUSSION

Katto contends the trial court erred by granting Malan's disqualification motion because there is not a substantial relationship between the matters in which Jaffe previously represented Malan and the present action. We disagree.

### A. Legal Principles

"A court may disqualify an attorney upon ' "a showing that disqualification is required under professional standards governing avoidance of conflicts of interest or potential adverse use of confidential information." ' " (*Havasu Lakeshore Investments, LLC v. Fleming* (2013) 217 Cal.App.4th 770, 777.) This authority "derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers.' " (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 (*SpeeDee*), quoting Code Civ. Proc., § 128, subd.

13

(a)(5); see *City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 846 (*Cobra Solutions*); *Beachcomber Management Crystal Cove, LLC v. Superior Court* (2017) 13 Cal.App.5th 1105, 1116.)

As relevant here, an attorney owes a duty of confidentiality to former clients. (See *Cobra Solutions*, *supra*, 38 Cal.4th at p. 846; Bus. & Prof. Code, § 6068, subd. (e)(1) [an attorney owes a duty "[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client"].) To enforce this duty, the Rules of Professional Conduct prohibit an attorney from representing a new client adversely to a former client "in the same or a substantially related matter . . . unless the former client gives informed written consent" to the adverse representation. (Rules Prof. Conduct, rule 1.9(a);[6] see *Cobra Solutions*, at p. 846 [citing former rule 3-310.) "If there is a substantial relationship between the subject of the current representation and the subject of the former representation, the attorney's access to privileged and confidential information in the former representation is presumed and disqualification of the attorney from the current representation is mandatory in order to preserve the former client's confidences." (*Fremont Indemnity Co. v. Fremont General Corp.* (2006) 143 Cal.App.4th 50, 67 (*Fremont*); see *Cobra Solutions*, at p. 847 ["When a substantial relationship between the two representations is established, the attorney is automatically disqualified from representing the second client."].)

"The subject of a current representation is substantially related to the subject of a prior representation . . . if the issues are sufficiently similar to support a reasonable inference that the attorney in the course of the prior representation was likely to have obtained confidential information material

---

6     Further undesignated rule references are to the Rules of Professional Conduct.

14

to the current representation." (*Fremont*, *supra*, 143 Cal.App.4th at p. 67.) In other words, "[t]wo matters are 'the same or substantially related' . . . if the lawyer normally would have obtained [confidential] information in the prior representation . . . and the lawyer would be expected to use or disclose that information in the subsequent representation because it is material to the subsequent representation." (Rule 1.9, cmt. 3.)

"[T]he substantial relationship test is broad and not limited to the 'strict facts, claims, and issues involved in a particular action.' " (*Knight v. Ferguson* (2007) 149 Cal.App.4th 1207, 1213, quoting *Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 711 (*Jessen*).) It is satisfied "whenever the 'subjects' of the prior and the current representations are linked in some rational manner." (*Jessen*, at p. 711, quoting *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283.) This breadth protects the former client because, "[d]epending upon the nature of the attorney's relationship with the former client, in the office or in the courtroom, the attorney may acquire confidential information about the client or the client's affairs which may not be directly related to the transaction or lawsuit at hand but which the attorney comes to know in providing the representation to the former client with respect to the previous lawsuit or transaction." (*Jessen*, at p. 712.)

"Thus, successive representations will be 'substantially related' when the evidence before the trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also *material* to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." (*Jessen, supra,* 111 Cal.App.4th at p. 713, italics added.)

This materiality requirement also applies to so-called " 'playbook' information"—that is, information about a " 'former client's settlement strategy and philosophy, or what sequence of demands or other tactics the former client uses in negotiating business deals, how the former client generally conducts its business, how the client deals with the stresses of litigation, what quirks of personality the client possesses or suffers from, or, in general, what "hot buttons" can be pushed to cause panic or confusion to the former client.' " (*Wu v. O'Gara Coach Co., LLC* (2019) 38 Cal.App.5th 1069, 1082; see *Fremont, supra*, 143 Cal.App.4th at p. 69; *Khani v. Ford Motor Co.* (2013) 215 Cal.App.4th 916, 921 (*Khani*).) Thus, an "attorney's acquisition [of playbook information] during the first representation . . . would not of itself require disqualification unless it were found to be 'material'—i.e., directly in issue or of critical importance—in the second representation." (*Farris v. Fireman's Fund Ins. Co.* (2004) 119 Cal.App.4th 671, 680 (*Farris*), citing *SLC Ltd. V v. Bradford Group West* (10th Cir.1993) 999 F.2d 464, 467-468 [finding playbook information consisting of former client's financial information substantially related to issues in current action]; accord, *Fremont*, at p. 69; see *Khani*, at p. 922 [lawyer's acquisition of general playbook information while defending auto manufacturer against "Lemon Law" claims was not substantially related to the lawyer's subsequent prosecution of Lemon Law claims against the manufacturer where the cases involved different vehicles, and the moving party's "bare-bones evidence" failed to show that any previous litigation policies remained in effect or that the same decision makers were involved in both cases].)

Although disqualification is ordinarily "automatic[ ]" when the substantial relationship test is satisfied (*Cobra Solutions, supra*, 38 Cal.4th at p. 847), a "narrow exception" applies when the "present client . . . offers

prima facie evidence of an unreasonable delay by the former client in making the motion and resulting prejudice to the current client" (*River West, Inc. v. Nickel* (1987) 188 Cal.App.3d 1297, 1309 (*River West*)). However, " 'mere delay' in making a disqualification motion is not dispositive. The delay must be extreme in terms of time and consequence." (*Id.* at p. 1311.)

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion." (*SpeeDee*, *supra*, 20 Cal.4th at pp. 1143-1144; see *Cobra Solutions*, *supra*, 38 Cal.4th at p. 848.)

## B. Analysis

Because the trial court resolved factual disputes about the extent to which Jaffe acquired Malan's confidential information during prior representations, we will "careful[ly] review" the trial court's ruling for an abuse of discretion. (See *SpeeDee*, *supra*, 20 Cal.4th at pp. 1143-1144.) On the record before us, we find no abuse of discretion.

We agree with Katto that much of the confidential information on which Malan based his disqualification motion is general playbook information that ordinarily does not warrant disqualification. This includes

17

information Jaffe acquired during prior representations about Malan's "attitudes, philosophy, and strategy towards litigation and settlement, his general business practices, customs, and positions, . . . and his attitude and tolerance for litigation." Malan did not meet his burden to show this general information is " 'material'—i.e., directly in issue or of critical importance" (*Farris*, *supra*, 119 Cal.App.4th at p. 680)—to the present case. (See *Khani*, *supra*, 215 Cal.App.4th at p. 922 [finding *general* playbook information not substantially related even when the underlying causes of action were the same].) Indeed, Malan did not even address the nature of the cases in which Jaffe acquired the information.

But Malan *did* meet his burden as to one category of material information: his finances. (See *Farris*, *supra*, 119 Cal.App.4th at p. 680.) Malan stated in his supporting declaration that Jaffe acquired confidential information about Malan's personal finances while representing Malan individually in *Sybrandy*, and while representing American Lending in *Gurfinkiel*, *Lopez*, and *Title365*. The trial court acted within its discretion when it found this information "directly material as such information could affect settlement discussions *and more*."[7] (Italics added.)

The trial court's "and more" finding is particularly compelling in light of Katto's cause of action for "an account of Malan's assets and liabilities, bank accounts, rent accounts, and other accounts." As the trial court properly observed, "For Mr. Jaffe to be a zealous advocate, it would be expected that he would use this information [about Malan's finances] in his representation of Katto." (See rule 1.9, cmt. 3 [matters are substantially

[7]   The trial court's materiality finding refutes Katto's claim that the trial court misapplied the substantial relationship test by not "requir[ing] Malan to meet his burden of demonstrating materiality."

18

related where "the lawyer would be expected to use or disclose . . . in the subsequent representation" confidential information "obtained . . . in the prior representation"].)

We thus conclude the trial court acted within its discretion in finding Malan met his burden of showing Jaffe acquired confidential information about Malan that is material to Jaffe's adverse representation of Katto in this case.

We likewise conclude the court acted within its discretion in finding Katto failed to establish Malan unreasonably delayed in bringing his disqualification motion. As in the trial court, Katto has cited no authority finding a two-month delay unreasonable or extreme. (See *River West*, *supra*, 188 Cal.App.3d at p. 1311.) We are unpersuaded by Katto's reference to other cases in which Malan claimed Jaffe was representing parties adverse to him yet failed to seek disqualification. Katto has not provided sufficient context about the claims, parties, or confidential information in those cases to support a finding that Malan's failure to seek disqualification of Jaffe there should bar him from doing so here.

19

## III.  DISPOSITION

The trial court's order granting Malan's motion to disqualify Jaffe is affirmed.  Katto to pay Malan's costs on appeal.

HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DO, J.