Filed 5/28/13; pub. order 6/18/13  (reposted 7/1/13 to clerically correct panel designation on 6/18 pub. order)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HAVASU LAKESHORE INVESTMENTS, LLC, et al., | |
| Cross-Complainants and Appellants, | G047244 (consol. with G047329) |
| v. | (Super. Ct. No. 30-2011-00487736) |
| TERRY L. FLEMING, SR., Individually and as Trustee, etc., et al., | O P I N I O N |
| Cross-defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Thierry Patrick Colaw, Judge.  Reversed.

Stradling Yocca Carlson & Rauth, Donald J. Hamman and Eve A. Brackmann for Cross-complainant and Appellant Havasu Lakeshore Investments, LLC.

Watt Tider Haffar & Fitzegerald and Jeffrey T. Robbins for Cross-complainants and Appellants Jean Victor Peloquin, J. Victor Construction, Inc., and Capital Source Partners.

Hartnett Law Group, Patrick M. Hartnett, and Jessica L. Jasper for Cross-defendant and Respondent Terry L. Fleming, Jr.

No appearance for Cross-defendant and Respondent Terry L. Fleming, Sr., Individually and as Trustee.

The trial court disqualified a law firm from simultaneously representing a limited liability company, its managing member (a partnership), and the person who managed that partnership (who was not himself a member of the company) in a lawsuit against two of the company's minority members. The court found that the interests of the company and the nonmember individual *potentially* conflicted, and concluded the law firm could not jointly represent the company and the nonmember individual against the company's minority members. The court based its ruling on rule 3-310(C) of the State Bar Rules of Professional Conduct and *Gong v. RFG Oil, Inc.* (2008) 166 Cal.App.4th 209, 214-216 (*Gong*), both of which concern an attorney's duty of *loyalty* to simultaneously represented clients.[1] Because no actual conflict of interest existed between the company and the individual who managed the company's managing member, and there was no reasonable likelihood such a conflict would arise, we reverse the court's ruling.[2]

FACTS[3]

---

[1] All references to rules are to the State Bar Rules of Professional Conduct.

[2] "[A]n order granting or denying a motion to disqualify an attorney is appealable . . . ." (*Truck Ins. Exchange v. Fireman's Fund Ins. Co.* (1992) 6 Cal.App.4th 1050, 1052, fn. 1.)

[3] We take the facts from the pleadings in the underlying litigation (*Gong, supra*, 166 Cal.App.4th at p. 215), declarations of the parties and their counsel, and the contracts between the parties.

The limited liability company — Havasu Lakeshore Investments, LLC (the LLC) — was formed in 2004 to acquire land and develop a recreational mobilehome park in the City of Lake Havasu, California. The LLC's managing member — Capital Source Partners (Peloquin's partnership) — is a partnership in which Jean Victor Peloquin is a general partner. Peloquin is also the principal of J. Victor Construction, Inc. (Peloquin's corporation), another member of the LLC. Peloquin, as an individual, is not himself a member of the LLC.

The LLC, Peloquin's partnership, Peloquin's corporation, and Peloquin are the appellants in this appeal and the cross-complainants in the underlying litigation. The respondents and cross-defendants — Terry L. Fleming, Sr. (Fleming Sr.) and his son, Terry L. Fleming, Jr. (Fleming Jr.) — are members of the LLC, each owning a 9.26 percent interest in the LLC.[4]

In June 2011, Fleming Jr. sued Peloquin individually for breach of contract, fraud, and negligent misrepresentation. Fleming Jr. alleged he exercised his buy-out option under an option agreement with Peloquin to have Peloquin buy Fleming Jr.'s membership interest in the LLC for an agreed upon fixed price (with interest thereon), but Peloquin did not comply.

In August 2011, the LLC, Peloquin's partnership, Peloquin's corporation, and Peloquin filed a cross-complaint against Fleming Sr. and Fleming Jr. for, inter alia, breach of contract and bad faith, as well as to set aside a trustee's sale and cancel the option agreement. The law firm of Hart, King & Coldren (HKC) represented all cross-complainants.

---

[4] Some references to "Fleming Sr." in this opinion refer collectively to Fleming Sr. (individually and as a trustee) and to an entity allegedly controlled and managed by the Flemings and to which Fleming Sr. transferred the LLC's property after he bought it at a trustee's sale.

In February 2012, Fleming Sr. moved to disqualify HKC from representing the LLC. Fleming Sr. based his motion on an attorney's duty of confidentiality under rule 3-310(E), arguing that he, as a member of the LLC, had previously communicated confidential information to HKC.[5]

In the disqualification motion, Fleming Sr. alleged that in August 2004, he and Fleming Jr. loaned $1.25 million to Peloquin's corporation. Fleming Sr. alleged that in November 2004, the Flemings converted the loan into a membership interest in the LLC. In December 2004, Peloquin entered into an option agreement with the Flemings, giving them an option to sell to Peloquin their membership interests in the LLC. In February 2009, the LLC defaulted on a bank construction loan (personally guaranteed by Peloquin and Peloquin's corporation) and the mobilehome park went into foreclosure. "At the instruction . . . of, and with the full knowledge and agreement of" cross-complainants, Fleming Sr. negotiated with the lender bank to buy the construction note. In May 2010, a notice of trustee's sale was recorded. In June 2010, Fleming Sr. bought the mobile home park at the trustee's sale.

Fleming Sr. supported these allegations with his declaration and that of his counsel. In addition, Fleming Sr. declared HKC represented the LLC in all or most of its dealings. He further declared, "On numerous occasions prior to the Trustee's Sale . . . , I discussed numerous legal matters with [HKC] with regard to [the LLC] and my membership interest in the same. [¶] At no time did I ever waive any attorney-client privilege as an owner of [the LLC] nor at anytime did [HKC] ask my permission to represent [the LLC] against myself . . . ."

---

[5] On appeal, only Fleming Jr. has filed a respondent's brief, even though he admittedly did not join in Fleming Sr.'s disqualification motion below. Appellants question Fleming Jr.'s standing to file a respondent's brief, but raise this issue in their reply brief; therefore, we do not address it. (*Kahn v. Wilson* (1898) 120 Cal. 643, 644.)

4

Peloquin and the LLC opposed Fleming Sr.'s disqualification motion. They argued that HKC did not represent the LLC "during the Flemings' actions that gave rise to the liability asserted in the Cross-Complaint" and that "HKC *never* represented Fleming Sr. and *never* received confidential information from Fleming Sr." Peloquin and the LLC asserted that, prior to the cross-complaint, HKC "represented Peloquin in relation to [the LLC] regarding only mobilehome park operational matters, none of which involved either Fleming Sr. or Jr." These matters pertained to lease agreements and community guidelines for the mobilehome park, its possible conversion to resident ownership, and rent defaults and security interests in the mobilehomes — matters which "required no information, and none was provided, concerning the members or internal operations of [the LLC], and in particular required no information and none was provided concerning Fleming Sr. or Jr." HKC represented Peloquin *after* Fleming Sr. bought the construction loan from the lender bank. "At that time Fleming Sr. was represented by separate counsel, Paul Bojic, who is [Fleming Sr.'s] counsel in this case."

Peloquin supported these allegations with his declaration and that of a partner of HKC. Peloquin declared that Snipper, Wainer and Markoff, *not* HKC, was legal counsel for the LLC in forming the LLC and preparing its operating agreement. He declared that HKC did not represent the LLC until Peloquin, as a partner in Peloquins' partnership (the managing member of the LLC), engaged HKC to file the cross-complaint.

A partner with HKC declared he had never represented or had conversations with Fleming Sr., and had never reviewed confidential information belonging to or handled matters pertaining to Fleming Sr. (other than through Fleming Sr.'s counsel). He declared that on April 23, 2010, Peloquin asked him "to address a situation where [Fleming Sr.] had apparently entered into a purchase agreement for the construction note on [the LLC's] property at an extreme discount without [Peloquin's] permission." The attorney further declared that, prior to that date, HKC had no

5

involvement in matters relating to the option agreement and the LLC's operating agreement.

Our review of the contracts between the parties reveals that the LLC's operating agreement states that Snipper, Wainer & Markoff drafted the operating agreement and represented Peloquin's partnership and was permitted in the future to act as attorney for the LLC and Peloquin's partnership, but not for any other member of the LLC "as it relates to their interest in the [LLC]." The option agreement (upon which Fleming Jr.'s lawsuit is based) lists Hartnett & Hayes, LLP as counsel for the Flemings.

In April 2012, the court requested the parties to brief the potential relevance of *Gong*, *supra*, 166 Cal.App.4th at pages 214-216 to Fleming Sr.'s motion for disqualification of HKC as counsel for the LLC.

In June 2012, the court granted Fleming Sr.'s motion to disqualify HKC as counsel for the LLC, thus allowing HKC to continue representing Peloquin, Peloquin's partnership, and Peloquin's corporation.[6] The court stated HKC should not be representing the LLC and "non-member Peloquin" in a cross-complaint against the Flemings, who are members of the LLC. The court relied on rule 3.310(C) and *Gong*, *supra*, 166 Cal.App.4th at pp. 214-216. The court quoted *Gong's* statement, "'To resolve this issue, we review the pleadings to determine whether the interests of [a majority shareholder and a corporation] potentially or actually conflict. (Rule 3-310(C).)'" The court concluded that "disqualification can be based on potentially conflicting interests." The court stated "the pleadings in this case demonstrate that, at a minimum, the interests of [the LLC] and Peloquin as a non-member of [the LLC] are at least potentially conflicting."

---

[6] The court, by ruling HKC could continue to represent Peloquin, Peloquin's partnership, and Peloquin's corporation impliedly found HKC had not obtained confidential information about Fleming Sr. so as to require disqualification of HKC from representing cross-complainants (adversaries of Fleming Jr.) under Rule 3-310(E).

6

Cross-complainants contend that neither the record nor the respondent's brief filed by Fleming Jr. reveal that an actual conflict exists to support the disqualification of HKC from jointly representing the LLC and Peloquin. They argue that *Gong*, *supra*, 166 Cal.App.4th 209 stated that disqualification is unwarranted when the conflict is merely hypothetical.

"'Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion.'" (*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 848 (*San Francisco*).) "'When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion.'" (*Ibid.*) But "'where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law.'" (*Ibid.*)

A court may disqualify an attorney upon "'a showing that disqualification is required under professional standards governing avoidance of conflicts of interest or potential adverse use of confidential information.'" (*Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 462.) An attorney bears two distinct ethical duties to a client: (1) a duty of loyalty, whereby an attorney devotes his or her "'entire energies to his client's interests'" (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 289, italics omitted), and (2) a duty of confidentiality, "which fosters full and open communication between client and counsel" (*San Francisco*, *supra*, 38 Cal.4th at p. 846).

Fleming Sr. based his disqualification motion on HKC's duty of *confidentiality*, claiming HKC "received confidential information" about him that could be used against him in the cross-complainants' action. Fleming Sr. relied on rule 3-310(E), which prohibits an attorney from accepting, without a current or former client's

7

consent, "employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

But the court granted Fleming Sr.'s motion on the basis of HKC's duty of *loyalty*, citing rule 3-310(C) and *Gong*, *supra*, 166 Cal.App.4th 209. Rule 3-310(C) provides: "A member shall not, without the informed written consent of each client: [¶] (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or [¶] (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or [¶] (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter." In other words, with few exceptions, an attorney may not simultaneously represent clients (even as to unrelated matters) whose interests are adverse to one another. (*Flatt v. Superior Court*, *supra*, 9 Cal.4th at p. 285, fn. 4.) This is because an attorney has a "'duty to protect his client in every possible way, and it is a violation of that duty for him to assume a position adverse or antagonistic to his client without the latter's free and intelligent consent given after full knowledge of all the facts and circumstances.'" (*Id.* at p. 289.) "A conflict of interest exists when a lawyer's duty on behalf of one client obligates the lawyer to take action prejudicial to the interests of another client; i.e., 'when, in behalf of one client, it is his *duty to contend for that which duty to another client requires him to oppose*.'" (Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2012) ¶ 4:1, p. 4-1.)

Finally, rule 3-600(E) is relevant to this case, as it permits counsel "representing an organization [to] also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of rule 3-310." Case law has established certain principles governing an attorney's ability ethically to simultaneously represent an organization and one or more of its constituents. For

8

example, counsel may not represent a corporation and its management when they have adverse, conflicting interests. (*Gong*, *supra*, 166 Cal.App.4th at p. 214.) "[O]nce a conflict has arisen between a corporation and one or more of its officers, directors or shareholders, corporate counsel may not simultaneously represent the corporation and the adverse officer, director or shareholder." (*La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court* (2004) 121 Cal.App.4th 773, 785.) "Thus, where a shareholder has filed an action questioning [the corporation's] management or the actions of individual officers or directors, such as in a shareholder derivative or . . . dissolution action, corporate counsel cannot represent both the corporation and the officers, directors or shareholders with which the corporation has a conflict of interest." (*Id.* at pp. 785-786.) In addition, counsel for a corporation should "refrain from taking part in any controversies or factional differences among shareholders *as to control of the corporation* . . . ." (*Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.* (1995) 36 Cal.App.4th 1832, 1842, italics added.) On the other hand, a "potential conflict . . . does not warrant automatic disqualification of joint counsel." (*Gong*, at p. 215.)

The issue here is whether the LLC and Peloquin have adverse interests, either actually or potentially. Fleming Jr. asserts that an actual conflict exists between the interests of the LLC and Peloquin, and describes the conflict as follows: "Peloquin's counsel must defend him against the claims of breach, misrepresentation, and fraud. [Citations.] Counsel for [the LLC] should be focused on the propriety of the claims regarding the purchase and foreclosure of [the LLC's] property." In other words, the alleged conflict is that HKC must defend Peloquin in Fleming Jr.'s action against him, while simultaneously prosecuting the cross-complaint on behalf of Peloquin, the LLC, and the other cross-complainants. Essentially, the risk is that HKC may spread itself too thin, become distracted, or prioritize one matter over the other. This is not the type of conflict addressed by rule 3-310(C). Even if it were, Fleming Jr. lacks standing to raise this concern as he "cannot show any legally cognizable interest that [was] harmed by

9

[HKC's] joint representation of [the Flemings'] adversaries." (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1358.)

We therefore examine the record for any substantial evidence to support the court's finding that the LLC and Peloquin had, at a minimum, a *potential* conflict of interest. In doing so, we recognize that a mere *hypothetical* conflict is insufficient. (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 302) Rather, there must be some identifiable potential conflict. In *Carroll v. Superior Court* (2002) 101 Cal.App.4th 1423, 1430, the appellate court "interpret[ed] the Rule 3-310 concept of potential conflict to mean, at least in the [juvenile] dependency context, *a reasonable likelihood an actual conflict will arise*." (Italics added.) Subsequently, our Supreme Court approved *Carroll's* interpretation in a juvenile dependency case. (*In re Celine R.* (2003) 31 Cal.4th 45, 58.) Similarly, a major treatise defines a potential conflict under rule 3-310 to mean "a *reasonably foreseeable* set of circumstances which could impair the attorney's ability to fulfill his or her professional obligations to each client in the proposed representation." (Vapnek et al., Cal. Practice Guide: Professional Responsibility, *supra*, ¶ 4:64, p. 4-24.14, italics added.)[7]

We apply the foregoing definitions of a potential conflict to the three sets of circumstances presented by the record and Fleming Jr.'s contentions: (1) the action on the cross-complaint, (2) Fleming Jr.'s lawsuit, and (3) the Flemings' status as members of the LLC.

---

[7] Absent a somewhat restrictive interpretation of the term "potential conflict," potential conflicts of interest would be inherent in every case of multiple representation. Counsel and their clients should not be subjected to such risk and uncertainty. Disqualification of counsel can harm the disqualified attorney's client, who must bear the monetary and other costs of finding a replacement. (*Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 300.) Indeed, disqualification motions can be (and often are) misused as weapons to harass opposing counsel, delay litigation, or force disadvantageous settlement. (*Id.* at p. 301.)

With respect to the cross-complaint, there is no conflict; the LLC's interests and Peloquin's are clearly allied. The LLC and the other cross-complainants seek to recover the LLC's property and to restore value to the LLC. Fleming Jr., in his respondent's brief, agrees these are the LLC's litigation goals. These goals are beneficial to every member of the LLC, including the Flemings in their status as members of the LLC, and to Peloquin, in his status as a partner and principal in the LLC's other members.

With respect to Fleming Jr.'s action against Peloquin based on the option agreement, the LLC is not a party to the lawsuit or the option agreement. The option agreement obligates Peloquin (should a Fleming exercise the contractual "put") to buy out Fleming's membership interest in the LLC at a *contractually specified fixed price*. The LLC has no beneficial right or obligation under, or duty arising from, the option agreement. It is a stranger to that transaction. Since the LLC has no right or duty at all under the option agreement, *a fortiori* it has no right or duty, the benefit or performance of which could conflict with a right, duty or obligation owed by Peloquin.

The only remaining question is whether the LLC's interests conflict with Peloquin's *solely* because two of the LLC's minority members are adversaries of Peloquin (and coincidentally of the LLC). The trial court, in granting Fleming Sr.'s disqualification motion, relied on *Gong*, *supra*, 166 Cal.App.4th 209, as does Fleming Jr. in his respondent's brief. Fleming Jr. contends he "has a vested interest in the independent representation of [the LLC] based on the fact that he maintains a percentage membership interest in [the LLC]," despite his exercise of the option to sell his interest under the option agreement.

In *Gong*, the issue was whether the interests of a corporation conflicted with those of its *majority* shareholder (who owned 51 percent of the corporation's stock and was also its managing director) for purposes of rule 3-310(C). (*Gong*, *supra*, 166 Cal.App.4th at pp. 212, 215.) The *minority* shareholder (the majority shareholder's

11

brother and a director of the corporation) owned 49 percent of the stock and sued the majority shareholder and the corporation (*id* at p. 212), seeking, inter alia, involuntary dissolution of the corporation and declaratory relief and specific performance of a buy-sell agreement (*id* at p. 215). The trial court severed the minority shareholder's claim for declaratory relief and ruled that the buy-sell agreement required the majority shareholder to buy the minority shareholder's shares at "'fair market value.'" (*Id.* at p. 213.) The minority shareholder then challenged the continuing ability of a law firm to represent both the majority shareholder and the corporation, claiming the corporation "now had a significant role in the dispute between the two brothers because the buy-sell agreement required [the corporation] to pay for an appraiser, selected by" the majority shareholder. (*Ibid.*) The minority shareholder also asserted the majority shareholder had "dissuaded a potential third party from purchasing" the corporation. (*Ibid.*) The minority shareholder further alleged the majority shareholder had abused his authority and wasted corporate property (e.g., damaging the corporation through his personal use of corporate funds). (*Id.* at p. 216.)

The Court of Appeal observed that "case law forbids dual representation in a derivative suit alleging fraud by the principals, because the principals and the organization have adverse, conflicting interests." (*Gong*, *supra*, 166 Cal.App.4th at p. 215.) The Court of Appeal also noted that although the minority shareholder had "not yet filed a derivative claim seeking damages on behalf of the corporation (which . . . would require [joint counsel's] disqualification), [the minority shareholder's] complaint alleges damage to [the corporation] through [the majority shareholder's] personal use of corporate funds, and the dissolution claim threatens [the corporation's] corporate existence." (*Id.* at p. 216.) In addition, the corporation had filed (through the majority shareholder and joint counsel for the corporation and the majority shareholder) a cross-complaint against the minority shareholder, which raised a concern the majority shareholder was using the corporation "as a pawn in his dispute with [his brother],

12

possibly to [the corporation's] detriment." (*Ibid.*) The Court of Appeal concluded that the minority shareholder's "allegations and the dissolution cause of action show that the interests of [the majority shareholder] and [the corporation] diverge" (*ibid.*), thereby requiring the disqualification of joint counsel for the corporation and the majority shareholder (*id.* at p. 212).[8]

The distinctions between *Gong*, *supra*, 166 Cal.App.4th 209 and the case at hand are significant. The instant case does not involve a derivative suit (or its substantive equivalent) or an attempt by the Flemings to force dissolution of the LLC. The Flemings do not allege Peloquin mismanaged the LLC or misused the LLC's property or funds. (Indeed, it is Fleming Sr. who has apparently foreclosed on and taken from the LLC its primary asset.) There is no pending buy-out at a price based on the LLC's fair market value (which, if mismanagement had been alleged, may have affected the value).[9]

Fleming Jr. cites no authority for the proposition that an attorney may never jointly represent an entity and its management against a non-managing minority member. That notion is contrary to rule 3-600(E), which expressly permits counsel to represent an organization and its constituents, subject to rule 3-310. In Formal Opinion No. 1999-153 of the State Bar of California Standing Committee on Professional Responsibility and Conduct, the committee interpreted rules 3-310 and 3-600 to decide the following issue: "May a lawyer, who is not currently and has not previously represented a close

---

[8] Cross-complainants suggest *Gong* was wrongly decided because the appellate court merely required the majority shareholder to hire and manage a second set of attorneys, while allowing him to continue to manage the corporation despite his alleged conflict of interest with it. Cross-complainants suggest the proper remedy for the majority shareholder's misuse of the corporation for his own personal interests was an appointment of a receiver for the corporation.

[9] Fleming Jr. obliquely asserts that evidence exists of fraud and misappropriation by Peloquin, but provides no record references and fails to specify whether the alleged fraud was perpetrated against the Flemings or upon the LLC.

13

corporation as to the subject of a dispute, be retained to represent the corporation and Shareholder A, who is authorized to retain and oversee counsel for the corporation, in a lawsuit brought by Shareholder B, the only other shareholder of the corporation, against both the corporation and Shareholder A?" (*Ibid.*) The committee concluded: "Under the particular facts presented, and subject to any limitations created by any fiduciary duties of Shareholder A, a lawyer may ethically represent both the corporation and Shareholder A in the lawsuit. . . . Under the facts presented, the corporation's consent to the joint representation may be obtained from Shareholder A. Consistent with rule 3-310(C)(1), this joint representation is permissible only for so long as the corporation and A do not have opposing interests in the lawsuit which the attorney would have a duty to advance simultaneously for each. Additionally, the lawyer must fulfill those duties to the corporation described in rule 3-600." (*Ibid.*) "In such circumstances, there may be economic and practical reasons for the Corporation and A to be represented jointly in B's lawsuit. Given the nature of the lawyer's duties to the corporation in this case, the Committee concludes there is no reason why a corporation's options under the facts presented should be any more limited than any other defendant in a similar situation." (*Ibid.*)

We find this reasoning to be persuasive and equally applicable to the facts at hand. Absent an actual conflict of interest (or the reasonable likelihood of one arising) between Peloquin and the LLC, HKC was ethically permitted to jointly represent all cross-complainants against the Flemings. Furthermore, Peloquin was authorized to provide, on the LLC's behalf, its consent to multiple representation.[10]

Fleming Jr. points out that HKC has withdrawn from its representation of any party in this case and concludes cross-complainants' appeal is "illogical." Whether,

---

[10] Cross-complainants contend their unanimous opposition to Fleming Sr.'s disqualification reveals they consented (and presumably would have done so in writing) to joint representation by HKC.

14

as Fleming Jr. postulates, cross-complainants wish to reinstate HKC as their counsel or desire to retain different counsel to jointly represent them, rule 3-310(C) does not bar an attorney from such joint representation under the current facts.

DISPOSITION

The court's order is reversed.  Cross-complainants are entitled to recover their costs on appeal.

IKOLA, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

FYBEL, J.

15

Filed 6/18/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HAVASU LAKESHORE INVESTMENTS, LLC, et al., <br><br> Cross-Complainants and Appellants, <br><br> v. <br><br> TERRY L. FLEMING, SR., Individually and as Trustee, etc., et al., <br><br> Cross-defendants and Respondents. | G047244 <br> (consol. with G047329) <br><br> (Super. Ct. No. 30-2011-00487736) <br><br> O R D E R |

Cross-complainant and appellant Havasu Lakeshore Investments LLC, and the law firms of Sheppard, Mullin, Richter & Hampton, O'Melveny & Meyers, Wilson, Sonsini, Goodrich & Rosati, Morrison & Forester and Gibson, Dunn & Crutcher have requested that our opinion, filed on May 28, 2013, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.

IKOLA, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

FYBEL, J.