Filed 7/26/22 Arriaga and Associates Wage and Hour Cases

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ARRIAGA AND ASSOCIATES WAGE AND HOUR CASES. | H048902<br>(JCCP No. 4980) |

Louis Christopher Arriaga and Arriaga & Associates, Inc. (A&A) (collectively, Arriaga) appeal from an order denying their motion to disqualify Bradley & Gmelich, LLP (B&G) from representing any parties prosecuting wage and hour claims against them in a coordination proceeding. Arriaga contends that B&G should have been disqualified as counsel because (1) B&G is concurrently representing both Maddison Group, Inc. (Maddison Group), an A&A competitor, and individuals and putative class members pursuing wage and hour claims against Arriaga; and (2) B&G's own interests are in conflict with the interests of the employees it seeks to represent. The trial court denied the disqualification motion because Arriaga lacks standing to pursue the relief requested. We affirm.

## I.     BACKGROUND

Louis Arriaga is the president and director of A&A, a California business that provides security services, principally armed security guards, to other businesses. A&A employed Jason Lara and Jose Segura as armed security guards. At the same time, Lara and Segura owned their own security guard business, Maddison Group. While Lara and Segura were still employed by A&A, A&A's primary client, Dave & Buster's, terminated

its security services contract with A&A and entered a security services contract with Maddison Group.

In May 2017, Arriaga filed a business tort action (the Arriaga action[1]) against Lara, Segura, and Maddison Group, among others, under various theories of liability based on the allegation that Segura and Lara stole Arriaga's main customer and improperly solicited A&A's employees to work for their competing business. B&G has represented Lara, Segura, and Maddison Group throughout the Arriaga action.[2]

In October 2017, Lara and Segura filed a cross-complaint against Arriaga in the Arriaga action alleging individual wage and hour claims and representative claims for civil penalties pursuant to the Private Attorneys General Act of 2004 (PAGA).

Several other plaintiffs—represented by counsel other than B&G—filed lawsuits against A&A before and after Lara and Segura filed their cross-complaint. In July 2017, plaintiffs Eddie Giron and Jesus Alarcon filed a putative class action (the Giron action[3]), alleging similar wage and hour violations against A&A. In March 2018, plaintiff George Jordan initiated a putative class and representative PAGA action (the Jordan action[4])

---

[1] *Arriaga v. Lara* (Super. Ct. Santa Clara County, No. 17CV310003).

[2] Arriaga's claims were disposed of by summary judgment in favor of Lara and Segura, and Maddison Group, which a different panel of this court affirmed in an unpublished opinion. (*Arriaga v. Lara* (Mar. 2, 2022, H046183) [nonpub. opn.].) Maddison Group is neither prosecuting nor defending any live claims in the present coordination proceeding, although B&G remains counsel for Maddison Group in the Arriaga action for the purposes of securing entry of judgment of dismissal and for costs. B&G has represented Maddison Group in connection with discrete litigation matters only, of which the Arriaga action is the only one still pending. B&G does not serve as general counsel for Maddison Group and does not advise Maddison Group in its general business matters.

[3] *Giron v. Arriaga* (Super. Ct. L.A. County, No. BC667718).

[4] *Jordan v. Arriaga & Associates, Inc.* (Super. Ct., Santa Clara County, No. 18CV325541).

2

against A&A for alleged wage and hour violations. In December 2018, plaintiff Francisco Ibarra initiated a class and representative action (the Ibarra action[5]).

In July 2019, B&G filed a wage and hour complaint (the Martin action[6]) against Arriaga on behalf of plaintiffs Douglas Martin, Marty Verducci, and Russ Oleyer. This complaint did not include class claims.

By January 14, 2020, all the foregoing actions were coordinated in the present proceeding. All told, B&G represents five of nine individual plaintiffs pursuing class claims in the coordination proceeding.

Pursuant to a stipulated order, B&G's individual clients—Lara, Segura, Martin, Verducci, and Oleyer—consolidated their claims against Arriaga by filing a joint First Amended Class Action Cross-Complaint on July 8, 2020. This was the first pleading by which any B&G client asserted class claims.

On November 12, 2020, Arriaga moved to disqualify B&G as counsel for any claimant in the coordination proceeding. Arriaga asserted that disqualification was appropriate because (1) B&G could not represent both the class members and Maddison Group because the respective interests of these clients were in conflict; and (2) B&G put their own interests ahead of the class's interest.

On February 4, 2021, the trial court filed a written order denying the motion. Arriaga timely appealed.

---

[5] *Ibarra v. Arriaga & Associates, Inc.* (Super. Ct., Santa Clara County, No. 18CV338814).

[6] *Martin v. Arriaga* (Super. Ct., Santa Clara County, No. 19CV350556).

3

## II. DISCUSSION

### A. *Legal Principles and Standard of Review*

#### 1. *Disqualification*

An attorney whose own interest or duties to another would create a substantial risk of impairing the interest or representation of a client has a disqualifying conflict. (*Sharp v. Next Entertainment, Inc.* (2008) 163 Cal.App.4th 410, 426 (*Sharp*).) A trial court may disqualify an attorney pursuant to its statutory and inherent power " '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' " (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 (*SpeeDee Oil Change*); *City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 846 (*Cobra Solutions*).) The paramount concern is the preservation of public trust in the scrupulous administration of justice and the integrity of the bar. (*Cobra Solutions*, *supra*, 38 Cal.4th at p. 846; *Forrest v. Baeza* (1997) 58 Cal.App.4th 65, 73.) Where a purported conflict of interest arises from an attorney's concurrent representation of clients, the focus is on the attorney's duty of loyalty and whether the clients have adverse interests. (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 284; *Sharp*, *supra*, 163 Cal.App.4th at p. 428.) Absent competent evidence of such a conflict, however, the client's right to chosen counsel will prevail. (See *Sharp*, *supra*, 163 Cal.App.4th at p. 428.)

#### 2. *Standing*

A party who moves to disqualify another's counsel must demonstrate a legally cognizable interest that would be harmed by the attorney's conflict of interest. (*Moreci v. Scaffold Solutions, Inc.* (2021) 70 Cal.App.5th 425, 432 (*Moreci*); *Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1356 (*Great Lakes*).) This requirement serves to protect against the exploitation of ethical rules and the resort to disqualification as a litigation tactic. (*Moreci*, *supra*, 70 Cal.App.5th at p. 434; *Great*

4

*Lakes*, *supra*, 186 Cal.App.4th at p. 1358; see also *SpeeDee Oil Change*, *supra*, 20 Cal.4th at p. 1145.)  Where no such interest is shown, a trial court may properly deny a disqualification motion for lack of standing alone.  (*Moreci*, *supra*, 70 Cal.App.5th at p. 444; *Great Lakes*, *supra*, 186 Cal.App.4th at p. 1359.)

"[G]eneral standing rules" require an attorney-client or " 'some sort of confidential or fiduciary relationship' " between the moving party and the attorney sought to be disqualified as a prerequisite to seeking disqualification.  (*Moreci*, *supra*, 70 Cal.App.5th at p. 436; *Great Lakes*, *supra*, 186 Cal.App.4th at p. 1356.)  Some courts, however, have endorsed what has been described as a "minority view" that recognizes nonclient standing where a " ' " 'manifest and glaring' " ' " ethical breach " ' "so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of [its] claims." ' " (*Moreci*, *supra*, 70 Cal.App.5th at p. 433; *Great Lakes*, *supra*, 186 Cal.App.4th at p. 1357.)

### 3. *Standard of Review*

Although we generally review for abuse of discretion an order granting or denying a motion to disqualify counsel, the trial court's discretion is limited by the applicable legal principles.  (*SpeeDee Oil Change*, *supra*, 20 Cal.4th at pp. 1143-1144.)  Because standing to bring a disqualification motion is a question of law, we review the resolution of the standing issue de novo in light of the relevant legal principles.  (*Moreci*, *supra*, 70 Cal.App.5th at p. 435; *Great Lakes*, *supra*, 186 Cal.App.4th at p. 1354; see also *SpeeDee Oil Change*, *supra*, 20 Cal.4th at p. 1144 [reviewing trial court's exercise of discretion as a question of law where the facts were undisputed, such that the trial court's decision turned on the application of legal principles to undisputed facts].)[7]

---

[7] Respondents argue that we should review the trial court's order for abuse of discretion, given what they characterize as the trial court's factual findings.  But the bare facts on which the trial court based its decision were not disputed.  In accordance with the foregoing authorities, we review de novo the trial court's determination that Arriaga lacked standing.

**B.** *Analysis*

The trial court concluded that Arriaga lacked standing to move to disqualify B&G because (1) B&G had no attorney-client or other confidential relationship with Arriaga; and (2) Arriaga did not establish a manifest and glaring ethical breach by B&G. In so doing, the trial court considered whether the evidence Arriaga submitted demonstrated that B&G had a conflict of interest, but found the evidence wanting. Moreover, the trial court rejected as "hypothetical and speculative" Arriaga's contention that B&G might disclose A&A's confidential information to Maddison Group. We agree.

**1.** *The Trial Court Applied Both the General and Minority Standing Rules*

Conceding it has no confidential relationship with B&G, Arriaga initially contends that the trial court failed to consider nonclient standing and Arriaga's claimed interest in what it characterizes as B&G's ethical conflict. But the trial court expressly applied the minority view permitting nonclient standing based on "an ethical breach that is 'manifest and glaring' and 'so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of his or her claims." The trial court recognized, however, that a nonclient under the minority view must nonetheless meet "stringent standing requirements, that is, harm arising from a legally cognizable interest which is concrete and particularized, not hypothetical." (*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1358; *Moreci*, *supra*, 70 Cal.App.5th at p. 434.)

Implicitly acknowledging its inability to meet this high bar, Arriaga appears to suggest that attorney conflicts are a different species of ethical breach conferring nonclient standing upon "the mere hint of conflict, the threat of injury and the potential to affect the outcome of the case." But the authorities on which Arriaga relies—*Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* (1997) 52 Cal.App.4th 1, 11 (*Cal Pak*) and

6

*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197 (*Kennedy*)—do not support its novel proposed standard.[8]

In *Cal Pak*, standing was not an issue in dispute. Nonetheless, the case readily supplied the "manifest and glaring ethical breach" required by *Great Lakes* and *Moreci*: the Court of Appeal affirmed a trial court order disqualifying plaintiff's counsel who had "offer[ed] to sell out" his client and sole class representative by proposing the relinquishment of all claims in return for defendant's payment to counsel personally of approximately $8 to $10 million. (*Cal Pak*, *supra*, 52 Cal.App.4th at pp. 7, 9.) The attorney's offer was "a direct, acknowledged, undisputed and indefensible betrayal by counsel of the interests of his client and the putative class" and "of public trust ' "in the scrupulous administration of justice and in the integrity of the bar" ' " that raised "serious questions" "concerning the preclusive effect of any resulting judgment" in class proceedings. (*Id*. at pp. 9, 12-13.) Like the trial court, we do not suggest that *Cal Pak* represents a threshold minimum for ethical breaches sufficient to confer nonclient standing. We observe merely that it is not authority for a legal proposition not considered and that its unique facts supply no basis to adopt Arriaga's unprecedented "mere hint of conflict" standard.

Arriaga's reliance on *Kennedy* is similarly unavailing. Unlike *Cal Pak*, the *Kennedy* court did address nonclient standing as a disputed issue. And as in *Great Lakes* and *Moreci*, *Kennedy* recited the minority view's requirement of an " 'ethical breach [that] is " 'manifest and glaring' " and so "infects the litigation in which disqualification

_____

[8] Arriaga also cites *In re Southwest Airlines Voucher Litigation* (7th Cir. 2015) 799 F.3d 701 (*Southwest*). But *Southwest* did not concern disqualification of counsel, much less standing to bring a disqualification motion. Instead, it concerned a reduction of the fee award paid to class counsel and a reversal of the incentive award paid to a named plaintiff, on the ground that counsel and the named plaintiff had failed to disclose a potential conflict of interest going to their adequacy to represent the class. (*Southwest*, *supra*, 799 F.3d at pp. 713-716.) *Southwest* does nothing to support the "hint of conflict" non-client disqualification standard urged by Arriaga.

7

is sought that it impacts the moving party's interest in a just and lawful determination of [the] claims." ' " (*Kennedy*, *supra*, 201 Cal.App.4th at p. 1204.) The facts in *Kennedy* do not suggest or support any dilution of this standard. In *Kennedy*, the mother in an acrimonious child custody dispute sought the disqualification of the child's paternal grandfather as counsel for the father: the paternal grandfather had previously served as counsel in the maternal grandfather's own child custody litigation, in which the mother had provided the firm with signed declarations. (*Id.* at pp. 1200-1202.) In affirming the trial court's grant of the mother's motion to disqualify the paternal grandfather, the *Kennedy* court noted the "multiple family entanglements" and "complex interrelationships between the parties": these included the potential misuse of confidential information the paternal grandfather obtained from the mother as a witness in her parent's case and the likelihood that the paternal grandfather would be called to testify in the custody proceedings while also serving as father's counsel. (*Id.* at pp. 1205-1213.) The mother accordingly demonstrated a personal stake in the duty of confidentiality that the paternal grandfather owed to the mother's own father, beyond merely a general interest in the administration of justice. "Thus, despite the broad language in *Kennedy* . . . , it was ultimately the attorney's possession of information the nonclient had shared confidentially, as well as the close relationship between the nonclient and the attorney's former client, that justified disqualification." (*Moreci*, 70 Cal.App.5th at p. 435.) *Kennedy* is properly understood as a fact-specific application of the legal framework discussed in *Great Lakes* and *Moreci*, rather than as authority for Arriaga's preferred standard. (See *ibid*.)

Alternatively, Arriaga asserts that the trial court was obliged to follow "overwhelming precedent" supporting an unspecified "heightened standard" for counsel in class action cases. To be sure, the aggregation of claims in a class action, resolution of which will bind absent members, warrants particular attention to the adequacy of class representation by the named plaintiffs and the qualifications of their counsel. (*Cal Pak*,

8

*supra*, 52 Cal.App.4th at p. 12.) But Arriaga's argument mistakes the merits of a disqualification motion in a class action for the requirements for a nonclient to bring such a motion in the first instance.[9]

Moreover, we have no reason to doubt the adequacy of existing law to protect the interests of the putative class. Prior to class certification, an attorney's representation of a putative class representative does not of itself create an attorney-client relationship between the attorney and absent members of the putative class. (See *Kullar v. Foot Locker Retail, Inc.* (2011) 191 Cal.App.4th 1201, 1205 (*Kullar*); *Sharp*, *supra*, 163 Cal.App.4th at p. 433.) A proponent of class certification must demonstrate a "community of interest" based on (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326.) As part of the class certification analysis, the trial court assesses the competency of class counsel, if the firm is representing the class as a whole and not simply the interests of the named representative plaintiffs, and if the named plaintiffs have lent their names to litigation that is controlled by class counsel. (*Sharp*, *supra*, 163 Cal.App.4th at p. 433.) We need not create a more solicitous standing

---

[9] Arriaga argues that *Walker v. Apple, Inc.* (2016) 4 Cal.App.5th 1098 (*Walker*) supports the proposition that a class action defendant generally has standing to move to disqualify counsel for a putative class. In *Walker*, a class action defendant brought a successful disqualification motion, but there is neither any indication that the Walkers raised standing nor any discussion of standing. (*Walker*, *supra*, 4 Cal.App.5th at p. 1102, 1105.) "It is axiomatic that cases are not authority for propositions not considered." (*People v. Casper* (2004) 33 Cal.4th 38, 43.) Accordingly, *Walker* does not support Arriaga's alternative standing threshold. *Walker* is further distinguishable in that the Walkers' counsel represented a certified class in another action against Apple, and the firm's continued representation of Walker would have required it to cross-examine a known but unnamed member of that certified class whose interests were adverse to the Walkers'. (*Walker*, *supra*, at pp. 1105-1106.)

9

standard for disqualification motions to ensure that class counsel is vetted before assuming representation of a class.

Relaxing the standing requirement to bring disqualification motions in class action cases, as a means to encourage early adequacy challenges, may "pose[] the very threat to the integrity of the judicial process that it purports to prevent. Such motions 'can be used to harass opposing counsel, to delay the litigation, to intimidate an adversary into accepting settlement on otherwise unacceptable terms, or for other strategic purposes.' [Citation.]" (*Sharp*, *supra*, 163 Cal.App.4th at p. 434.) To adopt a lower standard applicable to defendants in a putative class action would invite the inappropriate tactical disqualification motions that the standing requirement is intended to curtail.

### 2. *The Trial Court Properly Determined that Arriaga Lacks Standing*

Arriaga's theory of conflict is that B&G is using the wage and hour litigation against Arriaga to enrich itself, the named plaintiffs, and Maddison Group at the expense of the class, including by putting A&A out of business. Contrary to Arriaga's assertion that the trial court "ignored the evidence presented" and "failed to appropriately analyze the concept of conflict[,]" the record instead reflects that the trial court correctly found the largely undisputed evidence did not substantiate Arriaga's theory. On the record presented, Arriaga lacks the requisite standing to move for B&G's disqualification. [10]

First, Arriaga has not identified a potentially cognizable interest, other than its general interest in a just and lawful determination of the claims at issue. Arriaga's purported interests in being shielded from aggressive litigation tactics and in the preservation of trade secrets are hypothetical and speculative. Second, even under the more relaxed minority view of standing, Arriaga has not identified a manifest and glaring ethical breach that so infects the litigation as to impact its general interest in a just and

---

[10] Because Arriaga has not established standing under the minority view, we need not decide whether to endorse this more liberal view of standing.

10

lawful determination of the claims at issue. Arriaga's contentions regarding an alleged conflict of interest between Maddison Group or B&G and the putative class are unpersuasive.

### a. *Arriaga Has No Cognizable Interest in Disqualification Beyond a Just and Lawful Determination of the Claims*

Arriaga claims no cognizable interest or personal stake in the relationship between B&G and the putative class, aside from its general interest in the just and lawful adjudication of this lawsuit. As we will explain, the smattering of other interests claimed by Arriaga are not cognizable.

Arriaga hypothesizes that Maddison Group—which existed for years while its principals worked part time for A&A—intends to "destroy" A&A, given the loss of the Dave & Buster's contract in 2017 and of two smaller clients at an unspecified time. Arriaga posits that B&G's representation of a business competitor will subject Arriaga to scorched-earth litigation and potential misappropriation of trade secrets disclosed in discovery. In other words, the additional interests Arriaga asserts consist of (1) not being subjected to aggressive litigation tactics; and (2) the preservation of trade secrets. Neither interest supports standing.

First, if a non-client could establish standing to move for disqualification of its opponent's counsel by showing that alternative counsel would litigate the case in a manner that is more to its liking, the standing requirement would not serve its intended purpose of preventing the tactical use of disqualification motions. (See *Moreci*, *supra*, 70 Cal.App.5th at p. 434; *Great Lakes*, *supra*, 186 Cal.App.4th at p. 1358.) Moreover, nothing in the record supports Arriaga's hypothesis that different counsel would prosecute the wage and hour claims in this case to Arriaga's satisfaction, such as by agreeing to settlement on terms more favorable to Arriaga, or adopting a more genteel approach to the adversarial process. "[A] highly speculative and tactical interest does not meet the standing requirements." (*Great Lakes, supra,* at p. 1359 [defendant's argument

11

that joint representation would leave it unable to pay the judgment was insufficiently concrete and too speculative to support standing]; *Moreci*, *supra*, 70 Cal.App.5th at pp. 434, 441-442 [surmise that there might be duplication in the recovery gave rise to only a speculative and tactical interest].) Accordingly, Arriaga's asserted interest in removing opposing counsel who allegedly engage in scorched-earth litigation does not support disqualification standing.

Second, Arriaga's interest in the protection of trade secrets is the basis for a stipulated protective order that governs the use of information that A&A designates as proprietary. The protective order bars the use of confidential materials produced in discovery for any business purpose. In response to declarations by Lara, Segura, and a B&G attorney attesting that they, and B&G, will comply with the protective order, Arriaga relies on Louis Arriaga's conclusory declaration that "this litigation was a war geared at destroying me by bleeding me of funds with duplicative actions, unnecessary filings and fights, threats about information on how I run my business, and continued harassment by Lara, Segura and Maddison through their attorneys B&G." As support for this assertion, Louis Arriaga vaguely references his 2017 deposition and other discovery requests as evidence of a risk that trade secrets may be misappropriated by counsel. But nothing in the declaration indicates any concrete risk that B&G, or its clients, would violate the protective order or were pursuing litigation in furtherance of a covert Maddison Group agenda. Arriaga's interest in protecting its trade secrets is a generic one; the threat Arriaga posits is based exclusively on speculation as to the falsity of the contrary evidence. That does not suffice to meet its burden. (*Moreci*, *supra*, 70 Cal.App.5th at pp. 434, 441-442; see also *Sharp*, *supra*, 163 Cal.App.4th at p. 435 ["We cannot assume that the . . . firm will fail to abide its ethical obligations and there is no

12

evidence that it will subvert the interests of one of its clients . . . for those of its other client"].)[11]

### b. *Arriaga Showed No Manifest and Glaring Ethical Breach*

Because Arriaga is unable to identify any legally cognizable interest that may be impacted by an alleged ethical breach other than its interest in a just and lawful adjudication, to support standing under even the more relaxed minority view, Arriaga must at a minimum identify a manifest and glaring ethical breach that so infects the litigation as to impact that interest. (See *Great Lakes*, *supra*, 186 Cal.App.4th at p. 1357; *Moreci*, *supra*, 70 Cal.App.5th at p. 433.) As explained in the following sections, Arriaga has not identified such a breach, because it has not substantiated its various theories of a disqualifying conflict of interest.

### i. *Maddison Group and the Wage and Hour Claimants*

First, Arriaga argues that its own complaints about B&G's representation of Maddison Group create a conflict between Maddison Group and the wage and hour claimants that should preclude B&G from serving as counsel in the coordinated action. Arriaga's logic proceeds as follows: B&G represents Maddison Group, A&A's direct competitor; because Maddison Group and A&A are direct competitors, Maddison Group has an interest in the depletion of A&A's resources to weaken A&A as a competitor; B&G is also representing clients pursuing class claims; the class has an interest in the preservation of A&A's resources, both to ensure that a class recovery can be paid and, at

---

[11] Arriaga's theory of trade secret misappropriation is that Maddison Group has an interest in Arriaga's trade secrets that is not shared by the class. Even granting this assumption, it would follow that Lara and Segura as its principals share that interest. Removal of B&G would therefore do nothing to resolve the alleged conflict, Arriaga could make the same, speculative, trade secret misappropriation argument against any firm that represented Lara and Segura. We recognize that Arriaga's argument implicates class certification issues. We express no opinion on class certification, which will be addressed in the first instance in the trial court.

13

least for current employees, to preserve existing employment relationships. As such, Arriaga concludes, there is an actual conflict of interest that precludes B&G from concurrently representing Maddison Group and the class, implicating Arriaga's general interest in a just and lawful determination of the claims at issue.

On the present record, Arriaga's asserted harm is not "concrete and particularized," but merely hypothetical, because Arriaga has not identified a " 'manifest and glaring' " ethical breach that so "infects [this] litigation . . . that it impacts [Arriaga's] interest in a just and lawful determination of" the claims. (*Moreci*, *supra*, 70 Cal.App.5th at pp. 433-435; *Great Lakes*, *supra*, 186 Cal.App.4th at pp. 1357-1358.)

As a threshold matter, Arriaga's arguments concerning a disqualifying conflict between Maddison Group and the class are premature.[12] As yet uncertified, the class is not B&G's client. (*Kullar*, *supra*, 191 Cal.App.4th at p. 1205; *Sharp*, *supra*, 163 Cal.App.4th at p. 433.) It is when deciding whether to certify a class that the trial court will decide questions regarding the adequacy of class representation, including the adequacy of the named plaintiffs and their respective counsel, in the first instance. (*Sharp*, *supra*, 163 Cal.App.4th at p. 439.) The present disqualification motion is an inappropriate end-run around the certification procedures. (See *ibid*.)

Moreover, Arriaga has not shown an actual or potential conflict between Maddison Group and the class. Maddison Group is not a party to the wage and hour litigation and has no discernible stake in the outcome of that litigation. And Arriaga has not otherwise shown Maddison Group to have any other cognizable interest in the wage and hour claims of any A&A employee, including Lara and Segura. The relationship between Maddison Group as a corporation and Lara and Segura as its principals does not

---

[12] Lara and Segura have a financial interest in both the wage and hour litigation and Maddison Group. Although Arriaga seeks to disqualify B&G from representing Lara and Segura, Arriaga has not argued that there is a conflict between Lara and Segura, on one hand, and Maddison Group, on the other.

14

suffice, absent a showing that Maddison Group's interests are adverse to those of Lara and Segura. (See, e.g., *Havasu Lakeshore Investments, LLC v. Fleming* (2013) 217 Cal.App.4th 770, 778-782 (*Havasu*) [reversing disqualification of law firm from representation of both LLC and its managing member, where managing member was in litigation with minority members over option agreement to which LLC was not a party].)

At most, Arriaga has hypothesized that Maddison Group might have an indirect interest in potential collateral consequences of the wage and hour litigation. According to Arriaga, Maddison Group might be able to improve its market position if the litigation were to drain A&A's resources.[13] But "a mere hypothetical conflict is insufficient. [Citation.] Rather, there must be some identifiable potential conflict . . . . '[A] reasonably foreseeable set of circumstances which could impair the attorney's ability to fulfill his or her professional obligations to each client in the proposed representation.' " (*Havasu*, *supra*, 217 Cal.App.4th at p. 779, italics omitted.) Interests that are only economically adverse are not ordinarily deemed to be in conflict, for purposes of dual representation. (Cal. Rules of Prof. Conduct, rule 1.7, com. 1 ["simultaneous representation in unrelated matters of clients whose interests are only economically adverse, such as representation of competing economic enterprises in unrelated litigation, does not ordinarily constitute a conflict of interest"].) Arriaga's supposition that Maddison Group may receive an indirect economic benefit from the wage and hour litigation creates no conflict of interest with the wage and hour claimants represented by B&G. Arriaga's opinion as to Maddison Group's interest in running A&A out of business is too speculative and attenuated to constitute the manifest and glaring ethical

---

[13] Arriaga renews under this theory as well its contention that Maddison Group may gain a competitive advantage vis-à-vis A&A if sensitive information produced in this litigation is passed to it in violation of a protective order. We will not reiterate our analysis of this claim here.

breach required to support non-client standing. (*Moreci*, *supra*, 70 Cal.App.5th at p. 441; *Havasu*, *supra*, 217 Cal.App.4th at p. 780.)

Nor has Arriaga shown that B&G is, in fact, representing Maddison Group's purported interests in connection with the wage and hour litigation. Lara and Segura, who are both wage and hour claimants and corporate officers with an ownership interest in Maddison Group, submitted declarations in the trial court disclaiming any interest in seeing A&A go out of business or interfering with A&A's financial ability to pay any settlement or judgment in the wage and hour litigation. Arriaga, in turn, relies on a presumption that any competitor would be intent on monopolizing a given market, no matter the market's size and diversity, or the competitors' relative capacity for expansion and financial condition. Arriaga supplies no foundational particulars, such as the number of market participants, the geographic scope of the market, and A&A's current financial condition, as compared with the actual or anticipated marginal costs of litigation due to B&G's involvement. Instead, Arriaga points to B&G's tactics in the wage and hour litigation to as support for its theory that B&G is using the wage and hour litigation to run A&A out of business. We disagree.

Arriaga complains that B&G is (1) driving up litigation costs by filing unnecessary duplicative actions; (2) making threats about A&A's business practices; (3) threatening to report A&A to governmental authorities; (4) threatening protracted litigation by multiple individual employees; (5) attempting to obtain 100 percent of its individual clients' damages and 100 percent of its fees; and (6) seeking information about A&A's business practices in other states, Arriaga's daughter, and information about pricing and clients from Arriaga in discovery. But B&G's decision to litigate aggressively reflects no conflict between its duties to Maddison Group and to its wage and hour clients. The premise of Arriaga's contrary argument is that aggressive litigation tactics are not in the class's interest because they reduce the likelihood of a favorable settlement, such as by depleting the funds available for settlement or discouraging Arriaga from agreeing to

16

settle. This premise is far from concrete because, once again, Arriaga supplies no evidence to substantiate that theoretical possibility.[14]  Although aggressive litigation tactics could, in some cases, potentially prove self-defeating, they could in others be necessary to secure a favorable result.  B&G's litigation tactics on the present record do not support a conclusion that its loyalties are divided.  Nor do Arriaga's complaints about B&G's tactics render less speculative Arriaga's surmise that disqualification as to any named plaintiff would yield materially different tactics going forward. (See *Cal Pak*, *supra*, 52 Cal.App.4th at p. 11 [purpose of disqualification order is prophylactic, not punitive]; accord *Hetos Investments, Ltd. v. Kurtin* (2003) 110 Cal.App.4th 36, 48.) Notably, the trial court had before it the declarations by counsel for the other wage and hour claimants—in opposition to Arriaga's motion—indicating no concerns as to B&G's continued role in the litigation.  Arriaga has not shown that B&G was surreptitiously representing Maddison Group, an entity with no interest in the wage and hour litigation, in these proceedings, or that its tactics, however intended, more than hypothetically threatened the interests of the individual wage and hour claimants.

### ii.  *B&G and the Class*

Alternatively, Arriaga asserts that B&G has a manifest and glaring conflict of interest that so infects this litigation as to impair Arriaga's right to a just and lawful adjudication because B&G has placed its financial interests ahead of the class's interests. This challenge is predicated on e-mail correspondence between B&G and Arriaga's counsel from June 2018 to February 2019, before any of B&G's clients were asserting

---

[14] As one example, although Louis Arriaga filed a declaration with the moving papers, he did not provide evidence regarding A&A's financial condition, as would be necessary to substantiate the factual contention that aggressive litigation imperiled the class's interests by threatening A&A's ability to pay a judgment or remain viable.  To the contrary, B&G took the position, in e-mail correspondence Arriaga filed with the moving papers, that Arriaga was deliberately understating A&A's financial condition and hiding assets in an attempt to secure a settlement that was unfair to the class.

class claims.[15] As explained below, the record does not reflect a manifest and glaring breach of B&G's duties to its clients or the class sufficient to give Arriaga standing.

In June 2018, B&G proposed that if Arriaga would pay the full actual value of Lara, Segura, Oleyer, Verducci, and Martin's wage and hour claims, plus B&G's attorney's fees, Lara and Segura would dismiss their pending civil lawsuit (with prejudice as to the individual claims and without prejudice as to the PAGA claims), and B&G would not pursue any further claims against Arriaga on behalf of Arriaga's present or former employees. Arriaga did not accept the offer.

Between December 2018 and February 2019, B&G and Arriaga's counsel exchanged a series of further e-mails on the subject of settlement. B&G touted its experience defending PAGA class claims and its understanding of "exactly how these cases settle," projecting that Arriaga would attempt to secure a class settlement that was unfair to the putative class members by misrepresenting its financial wherewithal and offering just enough money to constitute a tempting fee award without adequately compensating the class: "The other attorneys will be inclined to grab their money and run, but I am not going to until all four of my clients have been settled. Then I will withdraw and you can work out a settlement with the other attorneys, who are going to be far more inclined to believe the sob story that Arriaga cannot afford the case. I know he can." Asserting that its continued participation in the case would benefit all claimants, B&G dangled the possibility of its withdrawal as an inducement for Arriaga to reconsider its settlement offer: "The only issue, as I see it, is my impact on whether you settle all of the other claims for 100% of their value, or I am out of these cases and you settle for $.10 on the $1.00. Your decision." B&G in essence threatened to remain a thorn in Arriaga's

---

[15] Arriaga also takes issue with an ex parte application B&G filed in October 2019 to continue a mediation. We find no support for the Arriaga's conclusion that the ex parte application represented an "[u]nequivocal [a]ttempt to [b]lock [c]lass [s]ettlement [e]fforts."

side until its clients were paid close to the full value of their claims, including by obstructing Arriaga's efforts to secure a class settlement that B&G considered inadequate.

With respect to class claims, the e-mails show that B&G was at worst indifferent to the resolution of the class claims then being prosecuted by individuals whom B&G did not represent—provided that the resolution of those claims did not impair its clients rights.[16] This does not demonstrate that B&G pursued its own or its clients' interests at the expense of a putative class that neither it nor its clients purported to represent.

To be sure, this record reflects that B&G was prepared to walk away from its clients' pending PAGA claims, without prejudice, and refrain from representing any other current and former A&A employees, if it could secure a satisfactory settlement for its individual clients. The propriety of this offer is "questionable," as the trial court put it. (See *O'Connor v. Uber Technologies, Inc.* (N.D. Cal. 2016) 201 F.Supp.3d 1110, 1134 (*O'Connor*) [a PAGA plaintiff takes on a special responsibility to their fellow aggrieved employee and the public at large; courts must be alert to a temptation to include a PAGA claim in a lawsuit merely to be used as a bargaining chip]; *Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 77 [citing *O'Connor* with approval]; see also Cal. Rules of Prof. Conduct, rule 5.6, subd. (a)(2) ["Unless authorized by law, a lawyer shall not participate in offering or making[] [¶] . . . [¶] . . . an agreement that imposes a restriction on a lawyer's right to practice in connection with a settlement of a client controversy, or otherwise"].) But Arriaga's reliance once again on *Cal Pak* does nothing to elevate this

---

[16] Arriaga reads the e-mails to demonstrate that B&G was willing to compromise "the settlement of the *class action* in exchange for payment of its fees." But B&G did not offer a class settlement, nor could it at that stage. At most it offered, on behalf of its clients, not to object to a class settlement, if and when other workers agreed to one, if its clients obtained satisfactory individual settlements. We need not endorse the settlement tactics to conclude that they were insufficient to confer standing on Arriaga.

19

tactic to a "manifest and glaring" breach that would supply Arriaga with the requisite invasion of its own interest in just and lawful adjudication

There are several important differences between *Cal Pak* and the present case. First, B&G did not offer to "sell out" its individual clients' interests – the settlement offer was for the full value of their individual claims. Second, although B&G and its clients were ostensibly prepared to abandon the obligations they had undertaken by filing PAGA claims, without prejudice to their prosecution by other plaintiffs, there were at the relevant time competing PAGA and class actions pending against Arriaga, whereas counsel in *Cal Pak* represented the sole class representative. (*Cal Pak*, *supra*, 52 Cal.App.4th at p. 7.) Accordingly, at least on this record, B&G's settlement offer did not "sell out" the interests of the state and other aggrieved employees so much as leave those interests to be adjudicated in pending litigation by other parties.

More broadly, Arriaga asserts that B&G's litigation tactics were adverse to the class in threatening to upset a hypothetical class settlement. But its own evidence reflects B&G's anticipation that Arriaga's settlement position as to class claims would itself be unfair to class members. It is, of course, a class member's right to object to a class action settlement that is unfair to the class. Because the class's interest is not in settling at any cost but in securing a fair settlement (see, e.g., *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 133), threatening to object to settlement on terms that are unfair to the class is consistent with, not adverse to, the class's interest.

Mindful of the caution to "be skeptical of the impetus and purpose of defendants' motion to disqualify" lest it "pose[] the very threat to the integrity of the judicial process that it purports to prevent" (*Sharp*, *supra*, 163 Cal.App.4th at p. 434), we conclude that Arriaga failed to establish a manifest and glaring breach of B&G's obligations to its individual clients or to the putative class that would, under the more inclusive minority view, confer standing on a nonclient. Thus, the trial court properly ruled that Arriaga

20

lacked standing to move disqualify B&G from representing its individual clients or the putative class.

## III. DISPOSITION

The trial court's order denying Arriaga's disqualification motion is affirmed. Lara and Segura are awarded their costs on appeal.

_____

LIE, J.

WE CONCUR:

_____

GREENWOOD, P.J.

_____

GROVER, J.

*Arriaga and Associates Wage and Hour Cases*
H048902